# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 200UNITED, and SERVICE EMPLOYEES INTERNATIONAL UNION, | Case No. _____ |
| Plaintiffs, | |
| v. | |
| DONALD J. TRUMP, President of the United States of America; MARGARET WEICHERT, Acting Director of the Office of Personnel Management; and UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, | |
| Defendants. | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Service Employees International Union Local 200United ("SEIU Local 200U") and Service Employees International Union ("SEIU") (collectively, "Unions"), for their complaint against Defendants President Donald J. Trump, Acting Director of the United States Office of Personnel Management Margaret Weichert, and the United States Office of Personnel Management ("OPM"), and hereby plead as follows:

## INTRODUCTION

1.     This action is brought by the Plaintiff Unions for declaratory and injunctive relief with respect to three Executive Orders issued by Defendant President Donald J. Trump that interfere with federal employees' statutory right to engage in collective bargaining:  (1) Order No. 13,836, attached as Exhibit 1 ("Collective Bargaining Procedures Order"); (2) Order No. 13,837, attached as Exhibit 2 ("Official Time Order"); and (3) Order No. 13,839, attached as Exhibit 3 ("Removal Procedures Order") (collectively referred to as the "Executive Orders" or "Orders").

2.     Each of these Executive Orders exceeds the constitutional and statutory authority granted to President Trump and the administrative agencies of the Executive Branch by interfering with collective bargaining and undermining specific rights granted to federal employees by Congress, including members of the federal employee bargaining units represented by Plaintiffs.  These Executive Orders seek to:  direct the collective bargaining negotiations that federal agencies enter into with public-sector unions and impose restrictions on the matters that parties may negotiate; impose limits on the activities that federal employees may engage in when acting as labor representatives; direct agencies to take particular negotiation positions and to refuse to negotiate with respect to certain matters that have long been the subject of bargaining; and require agencies to impose particular processes and approaches with respect to employee discipline.  Together, these Executive Orders seek to upend labor-management relations and the rights of federal employees with respect to the terms and conditions of their employment, to the detriment of those employees, the agencies for which they work, and the American public they serve.

3.     The President's authority to issue Executive Orders must stem from either the Constitution or an act of Congress.  *Medellín v. Texas*, 552 U.S. 491, 523 (2008); *Youngstown*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

*Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952).  Where, as here, the President has crossed the boundaries of his permitted Constitutional and statutory authority, it is emphatically the role of the Judicial Branch to reestablish the proper division of federal power.  Therefore, the Executive Orders must be declared invalid and an injunction issued to prohibit their implementation.

4.      Each of these Orders exceeds the President's constitutional authority as the Chief Executive, not in the least because they conflict with the President's duty to "take Care that the Laws be faithfully executed" in Article II, Section 3 of the United States Constitution.  Simply put, these Executive Orders intentionally contravene, and therefore do not faithfully execute, the laws Congress has enacted to govern federal employment and labor relations.

5.      Even if the Executive Orders were not unconstitutional (which they are), they should be enjoined because they violate duly enacted federal statutes.  The Executive Orders conflict with and impermissibly seek to rewrite portions of the Federal Service Labor-Management Relations Statute ("FSLMRS"), 5 U.S.C. §7101, *et seq.*, which governs labor relations in the federal civilian workplace, as well as other parts of Title 5 of the United States Code governing the working conditions of federal employees.  Congress has specifically concluded that collective bargaining and union representation for federal employees serves the public interest and government efficiency.  5 U.S.C. §7101 ("[T[he statutory protection of the right of employees to organize, bargain collectively, and participate through labor organizations of their own choosing in decisions which affect them—(A) safeguards the public interest, (B) contributes to the effective conduct of public business, and (C) facilitates and encourages the amicable settlements of disputes between employees and their employers involving conditions of employment….").  Accordingly, Congress enacted the FSLMRS to promote stable labor relations between federal workers who are union members and their agency employers.  The President may disagree politically with this and other federal laws he has sworn an oath to uphold, but federal statutes cannot be invalidated unilaterally by presidential executive order.

6.      Each of the Executive Orders conflicts with federal law in multiple ways.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

7.      Sections 3 and 4 of the Official Time Order (No. 13,837, "Ensuring Transparency, Accountability, and Efficiency in Taxpayer Funded Union Time Use") directly conflict with 5 U.S.C. §7131 and the comprehensive collective bargaining regime provided in Chapter 71 of Title 5, and intentionally undercut Congress's policy determinations with respect to federal employment and labor relations.

8.      Sections 2, 3, and 4 of the Removal Procedures Order (No. 13,839, "Promoting Accountability and Streamlining Removal Procedures Consistent With Merit System Principles") seek to override Congress's determinations concerning the proper scope of bargaining, as well as a negotiated grievance procedure, as reflected in Chapter 71 of Title 5; federal employees' opportunities to demonstrate acceptable performance, embodied in 5 U.S.C. §4302(c); and the adverse action regime contained in Chapter 75 of Title 5.

9.      Sections 5 and 6 of The Collective Bargaining Order (No. 13,836, "Developing Efficient, Effective, and Cost-Reducing Approaches to Federal Sector Collective Bargaining") seek to unlawfully prevent agencies from bargaining in good faith and exercising the discretion Congress explicitly gave them to bargain over the topics described in 5 U.S.C. §7106(b)(1).

10.     The Executive Orders also direct Defendant Office of Personnel Management ("OPM") and Acting OPM Director Weichert to take actions that conflict with law.  The Executive Orders require OPM to direct agencies to act in an unlawful manner consistent with the Executive Orders and to issue regulations in conflict with the APA, the FSLMRS, and other parts of Title 5 of the United States Code governing the working conditions of federal employees.  The President cannot by Executive Order insulate otherwise illegal agency action and regulations from judicial review or from the requirement that federal agencies comply with the law.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction pursuant to 28 U.S.C. §1331.

12.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(e) because Plaintiff SEIU Local 200U is located in this judicial district and its federal employee members work in this judicial district.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRADISTRICT ASSIGNMENT

13.    Plaintiff SEIU Local 200U is an unincorporated association and local union that represents federal employees who work in Buffalo, New York (Erie County), which is located in the Western District of New York.  The Local Rules of this Court therefore permit this action to be filed in Buffalo.

## PARTIES

14.    Plaintiff SEIU Local 200U is an unincorporated association and a labor organization of approximately 15,000 public and private sector employee members throughout Upstate New York, Pennsylvania, and Vermont, including federal government employees employed by the United States Department of Veterans Affairs (the "VA") in Buffalo and Canandaigua, New York, both of which are within this judicial district.  VA employees have organized into SEIU Local 200U bargaining units at specific facilities that include the VA Western New York Healthcare System (Buffalo) and the Canandaigua VA Medical Center. Local 200U's members are covered by collective bargaining agreements negotiated between them (acting through Local 200U as their representative) and these VA facilities.  Federal employees at other VA locations in Syracuse, New York, Albany, New York, and Erie, Pennsylvania have also organized into SEIU Local 200U bargaining units.  SEIU Local 200U maintains offices to serve its members' needs in both Buffalo and Rochester, New York, among other locations.

15.    Plaintiff SEIU is an unincorporated association and labor organization of 2 million members in the United States, Puerto Rico, and Canada.  SEIU is the certified bargaining representative for a nationwide consolidated bargaining unit of employees of the VA who have organized into local facility-specific bargaining units represented in bargaining by SEIU locals such as SEIU Local 200U.

16.    Defendant Donald J. Trump is the President of the United States of America. Defendant President Trump issued the Executive Orders challenged in this Complaint, substantial portions of which exceed his authority and are invalid.  President Trump is sued in his official capacity only.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

17.     Defendant United States Office of Personnel Management is a federal agency headquartered in Washington, D.C.  Defendant OPM is charged by Defendant Trump with implementing the Executive Orders subject to this Complaint.

18.     Defendant Margaret Weichert is the Acting Director of OPM.  Defendant Weichert is named as a party in her official capacity, as she has been directed to implement the Executive Orders.

19.     The Official Time Order, at Section 4(c)(i), provides that

The Office of Personnel Management (OPM) shall be responsible for administering the requirements of this section. Within 45 days of the date of this order, the OPM Director shall examine whether existing regulations are consistent with the rules set forth in this section. If the regulations are not, the OPM Director shall propose for notice and public comment, as soon as practicable, appropriate regulations to clarify and assist agencies in implementing these rules, consistent with applicable law.  Ex. 2 at 3-4.

20.     Similarly, the Removal Procedures Order, at Section 7(a), provides that

Within 45 days of the date of this order, the OPM Director shall examine whether existing regulations effectuate the principles set forth in section 2 of this order and the requirements of sections 3, 4, 5, and 6 of this order. To the extent necessary or appropriate, the OPM Director shall, as soon as practicable, propose for notice and public comment appropriate regulations to effectuate the principles set forth in section 2 of this order and the requirements of sections 3, 4, 5, and 6 of this order.  Ex. 3 at 3-4.

21.     The Collective Bargaining Order, at Section 3, creates a Labor Relations Group and installs the Director of OPM (currently Acting Defendant Weichert) as its chair. As Section 3 explains, Defendant Weichert as chair will lead the Group's work in, among other things, "[a]nalyzing provisions of term CBAs on subjects of bargaining that have relevance to more than one agency, particular those that may infringe on, or otherwise affect, reserved management rights"; and "[s]haring information and analysis . . . [to] encourage common approaches across agencies, as appropriate." Ex. 1 at 2.

## **FACTS**

## I.     **The Statutory Framework Governing Federal Employment**

22.     The Civil Service Reform Act ("CSRA"), enacted in 1978, reformed the civil service of the United States Federal Government. The CSRA is comprehensive and addresses nearly all aspects of employment with the federal government.

23.     Prior to enactment of the CSRA, federal employees' rights to form a union and bargain collectively were embodied only in executive orders issued over the years.  The specific intent of the CSRA was to supplant this patchwork of executive orders.

24.     The CSRA also included the Federal Service Labor-Management Relations Statute ("FSLMRS"), which appears in Chapter 71 of the CSRA. The FSLMRS reaffirmed the rights of federal employees to form unions and to bargain collectively through their unions over their conditions of employment.  5 U.S.C. §7101(a)(1).  In passing Chapter 71 of the CSRA, Congress chose to legislate in an area that previously had been governed by executive authority.

25.     By passing the FSLMRS, Congress intended to strengthen and promote collective bargaining in the federal sector. The FSLMRS was also specifically enacted by Congress as a bulwark against unchecked executive power.  During debate, Representative William L. Clay, Sr., of Missouri, Chairman of the Civil Service Subcommittee, stated that "testimony was overwhelmingly in support of the thrust of the committee's legislation because the existing program was susceptible to the whims of an incumbent President, limited in its scope, management-oriented, and lacking in the opportunity for judicial review of decisions of the Federal Labor Relations Council." 124 Cong. Rec. 25613 (1978).

26.     Congress specifically found that the existence of labor organizations and the institution of collective bargaining are in the public interest.  5 U.S.C. §7101 ("labor organizations and collective bargaining in the civil service are in the public interest").

27.     Through the FSLMRS, Congress grants federal employees the right to form unions and to bargain collectively and requires federal agencies to recognize labor unions duly selected as the exclusive bargaining representatives of their employees.  5 U.S.C. §7102; §7111(a); §7114(a)(1).

28.     The FSLMRS requires all labor unions chosen by federal employees to be their exclusive bargaining representatives to represent "the interests of all employees in the unit . . .

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

without discrimination and without regard to labor organization membership." 5 U.S.C. §7114(a)(1).  This duty of fair representation means that unions must represent both union members and non-members alike.

29.     Congress also imposed a duty to bargain in good faith on both labor organizations and federal agencies. 5 U.S.C. §7114(a)(4) ("Any agency and any exclusive representative in any appropriate unit in the agency, through appropriate representatives, shall meet and negotiate in good faith for the purposes of arriving at a collective bargaining agreement."); *see also* §7103(a)((12),(14); §7114(b).  In doing so, Congress required terms and conditions of employment to be mandatory subjects of good-faith collective bargaining.  *Id*. §7103(a)(12),(14).

30.     Congress specifically legislated with respect to what is known as "official time," which is time paid by the employing agency when an individual employee is engaged in union activity.  Because employee work for the union is part of the essential labor-management relations function of any effective enterprise, federal employees must be paid for work they do to assist with collective bargaining and administer collective bargaining agreements.  5 U.S.C. §7131 ("Official time").

31.     Congress also required labor organizations and agencies to include a negotiated grievance procedure in every collective bargaining agreement that must allow for employees to present their own grievances and for the employees' labor organization to take those grievances to arbitration if unresolved.  5 U.S.C. §7121.

32.     The scope of what disputes may be subject to such negotiated grievance procedures is broad, with Congress narrowly exempting only certain specific matters.  5 U.S.C. §7121(c) provides that the grievance procedure "shall not apply" to: "(1) any claimed violation of subchapter III of chapter 73 of this title [relating to prohibited political activities]; (2) retirement, life insurance, or health insurance; (3) a suspension or removal under section 7532 of this title [relating to national security issues]; (4) any examination, certification, or appointment; or (5) the classification of any position which does not result in the reduction in grade or pay of an employee."

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

33.     Congress also created the Federal Labor Relations Authority ("FLRA") to carry out specific purposes under the FSLMRS, including the adjudication of unfair labor practice complaints.  5 U.S.C. §7105; §7116.  Under the FSLMRS, any individual can file an unfair labor practice charge, and the General Counsel of the FLRA "shall investigate the charge and may issue and cause to be served upon the agency or labor organization a complaint." 5 U.S.C. §7118.  Only the FLRA General Counsel is authorized to issue and prosecute complaints under the FSLMRS.  *Id.*

34.     The position of General Counsel at the FLRA has been vacant since November 2017 and was vacant when President Trump issued the Executive Orders.

35.     The FLRA has announced and states publicly on its website that because it lacks a General Counsel, it cannot perform its statutory function of issuing complaints:  "ULP complaints may only be issued when the FLRA has a General Counsel."  This means that FLRA enforcement is per se unavailable; while an employee or union may file *charges*, no *complaints* leading to actual enforcement can be issued.  Indeed, it has been reported that during the years that the General Counsel position has been vacant, the FLRA has received *more than 6,500 unfair labor practice charges* from government workers and their unions for which it has not been able to issue complaints.  *See* https://news.bloomberglaw.com/daily-labor-report/at-trumps-federal-labor-police-lights-are-on-but-no-ones-home.

36.     There are several reasons that the legality of the Executive Orders cannot be reviewed by the FLRA, in addition to the lack of a General Counsel to bring Complaints prosecuting unfair labor practices, including but not limited to:  a General Counsel's decision *not* to issue a Complaint on an unfair labor practice charge is not judicially reviewable; the FLRA's orders on issues of negotiability are constrained to certain statutory issues; and the FLRA lacks jurisdiction to review the legality of the underlying administrative rules, including the type of constitutional and statutory infirmities that render these Executive Orders illegal.

### A.     Official Time

37.     Congress established a statutory right in the FSLMRS for federal employees to use "official time" for representational activities.  5 U.S.C. §7131.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

38.     The FSLMRS mandates official time for federal employees for participating in collective bargaining and other representational activities as follows :  1) "Any employee representing an exclusive representative in the negotiation of a collective bargaining agreement under this chapter shall be authorized official time for such purposes, including attendance at impasse proceeding, during the time the employee otherwise would be in a duty status," (5 U.S.C. §7131(a)); and 2) "any employee representing an exclusive representative," or, "in connection with any other matter covered by this chapter, any employee in an appropriate unit represented by an exclusive representative," "shall be granted official time in any amount the agency and the exclusive representative involved agree to be reasonable, necessary, and in the public interest" (*id.* at §7131(d)).

39.     The statute also permits official time for employee time participating in actions before the FLRA (such as testifying at an unfair labor practice hearing) at the discretion of the FLRA.  *Id.* at §7131(c) ("Except as provided in subsection (a) of this section, the Authority shall determine whether any employee participating for, or on behalf of, a labor organization in any phase of proceedings before the Authority shall be authorized official time for such purpose during the time the employee otherwise would be in a duty status.").

40.     Congress thus authorizes employees who form a labor organization to use a "reasonable" amount of paid time to perform representational duties, so long as those duties do not relate to the union's "internal [union] business," such as "the solicitation of membership, elections of labor organization officials, and collection of dues."  5 U.S.C. §7131(b).

**B.     Removals for Performance Deficiencies**

41.     The CSRA reformed federal personnel processes by requiring that actions taken to reward or discipline employees be based on employee performance determined through performance appraisal systems, rather than on other non-performance factors.

42.     5 U.S.C. §4302 directs federal agencies to develop one or more personnel appraisal systems that "(1) provide for periodic appraisals of job performance of employees; (2) encourage employee participation in establishing performance standards; and (3) use the results

of performance appraisals as a basis for training, rewarding, reassigning, promoting, reducing in grade, retaining, and removing employees."

43.     Congress further provided that, "[u]nder regulations which the Office of Personnel Management shall prescribe, each performance appraisal system shall provide for . . . reassigning, reducing in grade, or removing employees who continue to have unacceptable performance but only after an opportunity to demonstrate acceptable performance." 5 U.S.C. §4302(c)(6).

44.     5 U.S.C. § 4302(c)(6) establishes an opportunity period for an employee to improve his or her performance, commonly known as a "performance improvement period" or "PIP."

45.     Congress chose not to define the length of a PIP, nor is it listed as a reserved management right under the FSLMRS.

46.     Rather, Congress authorized agencies and labor organizations to bargain over the length of PIPs or how long a bargaining unit employee will have to "demonstrate acceptable performance" before the agency takes actions against an employee for unacceptable performance.

## II.     The Executive Orders

47.     The President's authority to issue an executive order "must stem either from an act of Congress or from the Constitution itself." *Youngstown*, 343 U.S. at 585.

48.     An executive order without congressional or constitutional authority is unconstitutional.  The President cannot, consistent with his constitutional role and duties, seek to rewrite statutes by way of Executive Order.

49.     Congress expressly addressed and granted the President authority to issue executive orders pursuant to the FSLMRS only in two specifically delineated areas.  First, the President may exclude an agency or agency subdivision from coverage under the FSLMRS if the agency or agency subdivision "has as a primary function intelligence, counterintelligence, investigative, or national security work." 5 U.S.C. §7103(b)(1) ("The President may issue an order excluding any agency or subdivision thereof from coverage under this chapter if the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

President determines that…").  Second, the President may issue executive orders suspending provisions of the FSLMRS "with respect to any agency, installation, or activity located outside the 50 States and the District of Columbia, if the President determines that the suspension is necessary in the interest of national security." *Id*. §7103(b)(2) ("The President may issue an order suspending…").

50.     Congress granted to specific agencies the authority to "prescribe rules and regulations to carry out the provisions" of the FSLMRS.  5 U.S.C. §7134.  The only agencies given that regulatory authority by Congress are: "the [Federal Labor Relations] Authority, the General Counsel, the Federal Mediation and Conciliation Service, the Assistant Secretary of Labor for Labor Management Relations, and the [Federal Service Impasses] Panel."  Neither the President nor OPM has been given such authority.

51.     Each of the Executive Orders at issue here expressly applies to federal employees that include the members of the federal bargaining units represented by Plaintiffs, or "labor organizations" and "collective bargaining representatives" that include Plaintiffs.  Each of these Executive Orders purports to restrict rights made available by Congress to federal employees and their labor organizations that include the federal employees represented by Plaintiffs and Plaintiffs.

### A.       The Collective Bargaining Procedures Order

52.     Executive Order No. 13,836 is titled "Developing Efficient, Effective, and Cost-Reducing Approaches to Federal Sector Collective Bargaining." 83 FR 25329.

53.     Section 6 of this Executive Order states that agencies "may not negotiate over the substance of the subjects set forth in section 7106(b)(1) of [T]itle 5."  This attempts to remove subjects from bargaining that have been expressly authorized by Congress.

54.     Sections 5(a), (c) and (e) of this Executive Order also purport to order agencies to engage in bad faith bargaining, in violation of the duty to bargain in good faith mandated by Congress in the FSLMRS.

55.     Section 5(a) mandates preconceived time limitations and end points for bargaining that are inconsistent with the duty to bargain in good faith.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

56.     Section 5(c) orders agencies to engage in bad faith bargaining by requiring that every agency "shall . . . propose a new contract, memorandum, or other change in agency policy and implement that proposal if the collective bargaining representative does not offer counter-proposals in a timely manner." Section 5(c).  This provision purports to order agencies to engage in unilateral implementation of bargaining proposals, contrary to good faith bargaining as required under the FSLMRA.

57.     Section 5(e) also conflicts with the duty to bargain in good faith by mandating the exchange of written proposals rather than the more flexible in-person negotiating process, undermining any authority of the agency representatives in bargaining.

**B.      The Official Time Order**

58.     Executive Order No. 13,837 is titled "Ensuring Transparency, Accountability, and Efficiency in Taxpayer-Funded Union Time Use." 83 FR 25335.

59.     The Official Time Order imposes restrictions on the use of official time that directly conflict with the FSLMRS.  These provisions aim to restrict federal employee labor unions' abilities to perform basic functions, including bargaining on behalf of the employee members and representing employee members in grievances and arbitrations.  The restrictions imposed by the Executive Order include limiting the time allowed to be spent on official time as well as how official time can and cannot be used.

60.     The Official Time Order legislates by using terminology not adopted by Congress. Specifically, the terms "taxpayer-funded official time" and "union time rate" found in Sections 2(i) and 2(j) are the President's attempt to amend the definitions in the FSLMRS and to create new restrictions not authorized or intended by Congress.

61.     Section 3(a) of the Official Time Order directs agencies to engage in bad-faith bargaining by refusing to agree to official time authorizations exceeding one hour per bargaining unit employee and attempts to establish that anything above one hour is presumptively not "reasonable, necessary, and in the public interest" nor furthers "effective and efficient" federal government.

62.     Section 3(a) of the Official Time Order conflicts with 5 U.S.C. §7131, which provides that employees be granted official time for representational purposes.

63.     Section 4(a) of the Official Time Order limits the application of official time in certain situations and provides that employees "shall adhere to" certain "requirements."

64.     Section 4(a)(i) prohibits employees from lobbying Congress during official time, except in their official capacities as employees.

65.     Section 4(a) of the Official Time Order conflicts with 5 U.S.C. §7131, which allows official time for any activity related to union representation or other related matters covered under the FSLMRS.

66.     Section 4(a)(ii)(1) of the Official Time Order directs agencies to prevent bargaining unit employees from spending more than one-quarter of their time overall on official time, and further directs agencies to discount any amounts in excess from the amount available to the employees in the next fiscal year.

67.     The Official Time Order also conflicts with the FSLMRS in that the President is effectively attempting to dictate what is "reasonable," contrary to Congress's direction and delegation of such determinations to labor organizations and agencies in bargaining.

68.     Section 4(a)(v) of the Official Time Order denies employees the use of official time for preparing or pursuing grievances, including arbitration of grievances brought against an agency except where 1) "such use is otherwise authorized by law or regulation"; 2) an employee uses official time to "present a grievance brought on the employee's own behalf; or to appear as a witness in any grievance proceeding"; or 3) where an employee uses official time to "challenge an adverse personnel action taken against the employee in retaliation for engaging in federally protected whistleblower activity."

69.     Section 4(b) of the Official Time Order also denies employees the ability to use any official time at all before obtaining management approval.

70.     Section 4(c) requires OPM to issue regulations implementing this attempt by the President to rewrite the FSLMRS, contrary to Congress's authorization that only certain agencies may implement this statute in 5 U.S.C. §7134.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

71.     Congress, through 5 U.S.C. §7131, explicitly allows employees acting on behalf of a labor organization to use official time in the above instances wherever provided for by contract between the labor organization and agency.

72.     The Official Time Order prohibits union representatives from using official time to provide representation to bargaining unit members and assisting with grievance drafting or proceedings, in direct conflict with 5 U.S.C. §7131.

73.     Because these provisions impose unlawful limits on the use of official time for various union activities, federal employees now will fear that they are putting their jobs in jeopardy by exceeding that amount of official time even where it is legal under the law and the appropriate collective bargaining agreement.

C.      **The Removal Procedures Order**

74.     Executive Order No. 13,839 is titled "Promoting Accountability and Streamlining Removal Procedures Consistent with Merit System Principles." 83 FR 25329.

75.     Congress specifically provided for merit system principles in 5 U.S.C. §4302(c)(6) and other sections of Title 5.

76.     The Removal Procedures Order effectively bans at least two areas that are mandatory subjects of bargaining under the FSLMRS: the implementation and timing of performance improvement periods and the requirements of just cause for disciplinary actions (including progressive discipline) as enumerated in *Douglas v. Veterans Administration*, 5 MSPR 280 (1981) (the "Douglas Factors").

77.     The Douglas Factors are considered a *sine qua non* of federal sector labor agreements.

78.     Through the Douglas Factors, discipline and adverse actions must promote the efficiency of the service, meaning the penalty for proven misconduct may not exceed the bounds of reasonableness.

79.     Section 2(a) of this Order limits "opportunity periods to demonstrate acceptable performance under section 4302(c)(6) of title 5, United States Code, to the amount of time that provides sufficient opportunity to demonstrate acceptable performance."

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

80.     Section 2(b) of this Order mandates that "[s]upervisors and deciding officials should not be required to use progressive discipline."

81.     Section 2(c) of this Order mandates 'individualized' consideration and "calibration" of disciplinary action.

82.     Section 3 of this Order orders agencies "to exclude from the application of any grievance procedures negotiated under section 7121 of Title 5, United States Code, any dispute concerning decisions to remove any employee from Federal service for misconduct or unacceptable performance."

83.     Section 4(a) of this Order excludes from the grievance procedure "the assignment of ratings of record" and awards "of any form of incentive pay, including cash awards; quality step increases; or recruitment, retention or relocation payments."

84.     Section 4(b)(iii) of this Order requires that "no agency shall… "make any agreement, including a collective bargaining agreement… (ii) that requires the use of procedures under chapter 43 of [T]itle 5, United States Code… before removing an employee for unacceptable performance."

85.     Section 4(c) of this Order directs that "no agency shall . . . generally afford an employee more than a 30-day period to demonstrate acceptable performance under section 4302(c)(6) of [T]itle 5, United States Code, except when the agency determines in its sole and exclusive discretion that a longer period is necessary to provide sufficient time to evaluate an employee's performance."

86.     Congress established the requirement of a negotiated grievance procedure set forth in 5 U.S.C. §7121(a), and further granted authority to labor organizations and agencies to exclude "any matter" from the grievance procedure negotiated among the parties.

87.     5 U.S.C. §7121(c) provides that the grievance procedure "shall not apply" to: "(1) any claimed violation of subchapter III of chapter 73 of this title (relating prohibited political activities); (2) retirement, life insurance, or health insurance; (3) a suspension or removal under section 7532 of this title; (4) any examination, certification, or appointment; or (5) the classification of any position which does not result in the reduction in grade or pay of an

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

employee." Thus, the aforementioned sections of the Removal Procedures Order do not address the five exclusive matters that Congress expressly excluded from the negotiated grievance procedure.

### III.    Mandated Agency Rulemaking and Implementation of the Executive Orders

88.    On May 25, 2018, OPM issued a press release regarding the Executive Orders. The press release explains OPM's intention to implement the Executive Orders.  On that same day OPM also conducted phone calls with media outlets and labor organizations and indicated that the Executive Orders were legally valid and would be implemented.

89.    OPM has expressed an intent to regulate the area of official time despite no authorization under the law to do so.

90.    On July 5, 2018, OPM issued the "Guidance for Implementation of Executive Order 13839 - Promoting Accountability and Streamlining Removal Procedures Consistent with Merit System Principles," as required by Section 6(d) of the Removal Procedures Order.

91.    On July 5, 2018, OPM issued a "Guidance for Implementation of Executive Order 13837 – Ensuring Transparency, Accountability, and Efficiency in Taxpayer-Funded Union Time Use."

92.    On August 25, 2018, the United States District Court for the District of Columbia issued a comprehensive Memorandum Opinion in *American Federation of Government Employees v. Trump*, D.D.C. Case. No. 18-cv-01261-KBJ, declaring certain specific provisions of the Executive Orders invalid and contrary to law, and enjoining "the President and his subordinates from implementing or giving effect to" those provisions.  The enjoined provisions included:  Collective Bargaining Order (No. 13,836) sections 5(a), 5(e), and 6; Official Time Order (No. 13,837) sections 3(a), 4(a), and 4(b); and Removal Procedures Order (No. 13,839) sections 3, 4(a), and 4(c).

93.    On August 29, 2018, OPM issued another Guidance, rescinding the July 5, 2018 Guidances in light of the District Court's injunction.

94.    On October 5, 2018, then-OPM Director Jeff T.H. Pon resigned and was replaced by OPM Acting Director Weichert.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

95.     On November 8, 2018, OPM, through Acting OPM Director Weichert, issued another Guidance with respect to these Executive Orders.  This Guidance encourages agencies, notwithstanding the decision and order of the United States District Court enjoining the President and his subordinates, including OPM, from implementing the enjoined provisions of the Executive Orders, to implement the substantive provisions of the Executive Orders through bargaining proposals, notwithstanding the statutory duty to bargain in good faith.

96.     On July 17, 2019, the United States Court of Appeals for the District of Columbia Circuit reversed the decision of the United States District Court for the District of Columbia on jurisdictional grounds without reaching the merits of the unions' challenge to the Executive Orders.  The Circuit Court ordered the Clerk to withhold issuance of the mandate pending the deadlines for *en banc* review of the panel decision.  Those deadlines have not yet passed.

97.     The United States has since moved the court to expedite issuance of the mandate and/or to lift the District Court's stay of the implementation of the Executive Orders, which remains in place.  If the D.C. Circuit does any of the following, the stay will be removed and the Executive Orders will no longer be enjoined:  decline to grant the petition for rehearing *en banc*; grant the United States' motion to expedite the mandate or grant the request to lift the stay.

98.     If the District Court for the District of Columbia's injunction is lifted by the issuance of mandate from the Circuit Court for the District of Columbia, Plaintiffs expect and all evidence indicates that OPM will act swiftly to implement the unlawful Executive Orders, as directed by the President, including by enacting unlawful regulations; directing agencies to immediately implement unlawful requirements of the Executive Orders with respect to the terms and conditions of employment for their federal employees; and directing agencies to interpret, implement, and revise existing bargaining agreements consistent with the unlawful requirements of the Executive Orders.

## CLAIMS FOR RELIEF

### Claim I: Separation of Powers/*Ultra Vires*

### The Executive Orders Improperly Attempt to Legislate in the Area of Labor Relations

99.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

100.     This Court has jurisdiction to grant relief when the President acts beyond the scope of his authority and violates the law in a manner that injures an individual or organization.

101.     "The President's power, if any, to issue [an Executive Order] must stem either from an act of Congress or from the Constitution itself." *Youngstown*, 343 U.S. at 585.  An executive order without such authority is unlawful. *Id.*

102.     Defendant Trump has no constitutional authority to issue the Executive Orders because said orders reach beyond guidance and supervision to subordinates, and affect the rights of third parties, such as the Plaintiff Unions.

103.     Defendant Trump's claim of Congressional authority to issue the Executive Orders under 5 U.S.C. §7301 is invalid. 5 U.S.C. §7301 merely reads: "The President may prescribe regulations for the conduct of employees in the executive branch."

104.     While 5 U.S.C. §7301 is the source from which prior presidents have issued executive orders pertaining to drug testing in the federal workforce and ethics, relations between federal agencies and the unions who represent federal employees is not "employee conduct."

105.     Congress granted the President authority to issue executive orders pursuant to the FSLMRS in only two specific, narrow areas.  First, the President may exclude an agency from coverage under the FSLMRS if the agency "has as a primary function intelligence, counterintelligence, investigative, or national security work." 5 U.S.C. §7103(b)(1). Second, the President may issue executive orders suspending provisions of the FSLMRS "with respect to any agency, installation, or activity located outside the 50 States and the District of Columbia, if the President determines that the suspension is necessary in the interest of national security." 5 U.S.C. §7103(b)(2).

106.     The President's authority to issue executive orders under the broad, vague authority of 5 U.S.C. §7301 is superseded by the specific Congressional enactment of the FSLMRS, a comprehensive statute regulating the relationship between federal agencies and their employees' labor unions.

107.    The Executive Orders were not issued under the narrow, specific authority granted by Congress to the President under either applicable provision of 5 U.S.C. §7103(b).

108.    Congress specifically did not grant OPM the authority to prescribe rules and regulations to carry out the FSLMRS.  *See* 5 U.S.C. §7135 (granting authority to the FLRA, FMCS, and the Assistant Secretary of Labor for Labor Management Relations, among others).

109.    Therefore, the Executive Orders were issued without legal authority and are *ultra vires*.

110.    Further, OPM has no authority to issue regulations concerning the provisions of the FSLMRS.

## Claim II: Separation of Powers/*Ultra Vires*

### The Official Time Order is an Improper Attempt to Legislate Different Requirements Under U.S.C. §7131 than Congress Prescribed

111.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

112.    The Official Time Order attempts to unilaterally direct agencies to limit the amount of official time given to employees, contrary to Congress's direction with respect to employees' right to official time and intent to allow the parties to negotiate in good faith to reach agreement upon an amount that is "reasonable" under 5 U.S.C. §7131.

113.    Section 3(a) of Exec. Order No. 13,837 directs agencies to engage in bad faith bargaining in violation of the FSLMRS.

114.    Section 3(a) of Exec. Order No. 13,837 also conflicts with 5 U.S.C. §7131, which provides that employees be granted official time for representational purposes.

115.    Section 4(a) of Exec. Order No. 13,837 limits the application of official time in certain situations and provides that employees "shall adhere to" certain "requirements" and denies the use of official time in direct conflict with the FSLMRS, including 5 U.S.C. §7131, which allows official time for any activity related to union representation or other related matters covered under the FSLMRA.

116.    This Order also directly conflicts with the FSLMRS in that the President is effectively attempting to dictate what is "reasonable," contrary to Congress's direction and delegation of such determinations to labor organizations and agencies in bargaining.

117.    Section 4(b) of Exec. Order No. 13,837 also directly conflicts with the FSLMRS by denying federal employees the ability to use any official time at all before obtaining management approval.

118.    Section 4(c) requires OPM to issue regulations implementing this attempt by the President to rewrite the FSLMRS, contrary to Congress's authorization that only certain agencies may implement this statute, in conflict with 5 U.S.C. §7134.

119.    Section 4(a) of this Order is also contrary to the applicable provisions expressly prescribed by Congress because it impermissibly limits areas that Congress designated as mandatory subjects of bargaining; and, further, it oversteps the parties' right to arbitrate disagreements over the reasonableness of discipline imposed for misuse of official time under the statutorily-required grievance arbitration procedure.

120.    Congress broadly defined the use of official time for activities related to union representation or related to any matter covered by the FSLMRS, except for those excluded by 5 U.S.C. §7131(b).  Exec. Order No. 13,837 would require agencies to propose to terminate these provisions in Plaintiffs' collective bargaining agreements, to the detriment of employees.

121.    Via Section 4 of Exec. Order No. 13,837, the President also assumes power for himself that Congress intended the FLRA, or the FSIP, to exercise.

122.    By enacting this Order the President has attempted to override Congress's legislative authority, and has acted beyond his constitutional and statutory authority.

123.    This Executive Order was issued without legal authority and is *ultra vires*.

### Claim III: Separation of Powers/*Ultra Vires*

### The Removal Procedures Order is an Improper Attempt to Legislate a Performance System Different than Congress Prescribed

124.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

125.    Through Executive Order No. 13,839, the President acted beyond the scope of his authority and violated the law, injuring both the Plaintiff Unions and their members. The President does not have the authority to legislate under the Constitution and the actions sought under this Executive Order are a clear attempt to exercise legislative authority vested only in Congress.

126.    Sections 2(a), 2(b), 2(c), 3, 4(a), 4(b)(iii) and 4(c) of this Order directly conflict with governing and applicable provisions of law as set forth by Congress in Title 5.

127.    By enacting this Order the President has attempted to override Congress's legislative authority, and has acted beyond his constitutional and statutory authority.

128.    This Executive Order was issued without legal authority and is *ultra vires*.

### Claim IV: Separation of Powers/*Ultra Vires*

### The Executive Orders Restrict the Scope of Bargaining
### Beyond the Limits Set by Congress

129.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

130.    The Executive Orders restrict labor representatives and managers from agreeing to certain conditions, such as official time limitations, grievable performance awards, permissive topics, and free office space, at any point during the bargaining process.

131.    In each Executive Order, the President seeks to exclude subjects from bargaining and directs the outcome of bargaining on other matters that Congress intended for labor organizations and agencies to negotiate about in good faith.

132.    In Executive Order No. 13,839, the President seeks to exclude additional matters from the negotiated grievance procedure in a manner not contemplated by Congress in 5 U.S.C. §7121(c). These additional matters were left to labor organizations and agencies to negotiate.

133.    Congress, through the FSLMRS, gives labor organizations and agencies the authority to bargain over conditions of employment that do not interfere with the reserved management rights set forth at 5 U.S.C. §7106.  By prohibiting certain conditions of employment not listed in 5 U.S.C.

§7106, the President made those items effectively non-negotiable despite being subject to bargaining under the FSLMRA.

134.    Congress did not give the President authority to decide unilaterally which matters will and will not be subject to the negotiated grievance procedure or will or will not be bargained.

135.    By enacting these Orders the President has attempted to override Congress's legislative authority, and has acted beyond his constitutional and statutory authority.

136.    These Executive Orders were issued without legal authority and are *ultra vires*.

### Claim V: 5 U.S.C. §7211

### The Executive Orders are an Attempt to Interfere with the Right Provided by Congress in 5 U.S.C. §7211

137.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

138.    Congress protected "the rights of employees, individually or collectively, to petition Congress or a Member of Congress, or to furnish information to either House of Congress, or to a committee or Member thereof," stating further those rights "may not be interfered with or denied." 5 U.S.C. §7211.

139.    The wages, benefits and working conditions are established and/or affected by laws adopted by Congress.  Therefore, employees, through their labor organizations, express viewpoints on wages, benefits, and other working conditions by meeting with and petitioning Congress, as well as providing information to Congress and members of Congress.  Through these Executive Orders, the President is interfering with employees' rights under the law.

### Claim VI: First Amendment

### The Official Time Order Violates the First Amendment to the U.S. Constitution

140.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

141.    Exec. Order No. 13,837 prohibits representatives of a labor organization from using official time to "prepare or pursue grievances (including arbitration of grievances) brought

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

against an agency" pursuant to a collective bargaining agreement, yet provides an exception for employees working on their own behalf.

142. In treating unions and their representatives differently from individual employees, Section 4(a)(v) of Exec. Order No. 13,837 is in violation of the First Amendment as it encroaches upon Plaintiffs' right to take collective action to pursue interests of their members.

## Claim VII: Take Care Clause

**The Executive Orders Violate the President's Constitutional Duty to Take Care the Laws are Faithfully Executed**

143. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

144. Each of the Executive Orders attempts to exceed the President's authority under the Constitution and as granted by Congress. Each of the Executive Orders attempts to contravene statutory provisions mandated by Congress. Each of the Executive Orders attempts to undermine the express purposes of the relevant statutes enacted by Congress to govern labor management relations and the employment of federal employees.

145. By issuing these Executive Orders, the President has not faithfully executed the laws enacted by Congress.

146. Therefore, by issuing these Executive Orders, the President has violated the duty set forth in Article II, Section 3 of the United States Constitution to "take Care that the Laws be faithfully executed."

## Claim VIII: Administrative Procedures Act

**OPM's Actions Implementing Executive Orders Violate the APA**

147. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

148. The Plaintiff Unions and their federal employee members are subject to the requirements of the Executive Orders and are persons who have suffered legal wrong as a result of, and have been adversely affected or aggrieved by, the President, OPM, and Acting OPM Director's actions with respect to these Executive Orders for purposes of 5 U.S.C. §702.

149.    The actions of OPM and its former Director and Acting Director to implement these Executive Orders, including but not limited to the rule-making directed by these Orders and actions ordering federal agencies to implement these Executive Orders violate the Administrative Procedures Act because these actions are:

a.    Inconsistent with governing statutes in violation of 5 U.S.C. §706(2)(A);

b.    Arbitrary and capricious in violation of 5 U.S.C. §706(2)(A); and

c.    Exceed statutory authority, in violation of 5 U.S.C. §706(2)(C).

150.    Rulemaking by OPM pursuant to these Executive Orders, which direct the outcome and content of OPM's rule-making process, makes notice-and-comment requirements for agency rule-making a sham.  Rulemaking by OPM pursuant to these Executive Orders therefore violates 5 U.S.C. §706(2)(D) by failing to observe procedures required by law.

151.    OPM's implementation of these Executive Orders by taking action directing agencies to comply, absent rulemaking and outside any and all authority granted either to OPM or the President to impose the requirements of these Executive Orders, also violates 5 U.S.C. §706(2)(D) by failing to observe procedures required by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that the Court:

a.    Enter a declaratory judgment that Executive Order Nos. 13,836, 13,837, and 13,839 are invalid and unlawful in whole, or in any part found to be unlawful by the Court;

b.    Enter a preliminary or permanent injunction prohibiting Defendant President Trump or his subordinates, including Defendants Weichert and OPM, from implementing, enforcing, or otherwise giving effect to Executive Order Nos. 13,836, 13,837, and 13,839 in whole, or in any part found to be unlawful by the Court;

c.    Enter a declaratory judgment that Defendants OPM and Acting OPM Director Weichert's actions to implement Executive Order Nos. 13,836, 13,837, and 13,839, including any regulations required by Executive Order Nos. 13,836, 13,837, and 13,839, violate the Administrative Procedures Act and are invalid;

d.    Enter a preliminary or permanent injunction prohibiting Defendants OPM and

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Acting OPM Director Weichert from taking any actions to implement, enforce, or otherwise give effect to Executive Order Nos. 13,836, 13,837, and 13,839, including by issuing regulations required by Executive Order Nos. 13,836, 13,837, and 13,839.

   e.  Award Plaintiffs their costs and expenses, including reasonable attorneys' fees and expert witness fees;

   f.  Award such further and additional legal or equitable relief as is just and proper.

Respectfully Submitted,

Dated: August 13, 2019     By: */s/ Mairead E. Connor*_____
                Mairead E. Connor

         MAIREAD E. CONNOR
         LAW OFFICES OF MAIREAD E. CONNOR, PLLC
         White Memorial Building, Suite 204
         100 E. Washington St.
         Syracuse, New York  13202
         Tel: (315) 422-6225
         mec@connorlaborlaw.com

         DANIELLE LEONARD (pro hac vice application forthcoming)
         BARBARA J. CHISHOLM (pro hac vice application forthcoming)
         ALTSHULER BERZON LLP
         177 Post Street, Suite 300
         San Francisco, CA 94108
         Tel: (415)421-7151 (office)
         dleonard@altber.com
         bchisholm@altber.com

         NICOLE BERNER, General Counsel (pro hac vice application forthcoming)
         CLAIRE PRESTEL, Associate General Counsel (pro hac vice application forthcoming)
         Service Employees International Union
         1800 Massachusetts Avenue, NW
         Washington, DC 20036
         Tel: (202) 730-7468
         nicole.berner@seiu.org
         claire.prestel@seiu.org

         *Attorneys for Plaintiffs*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF