# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 200UNITED and SERVICE EMPLOYEES INTERNATIONAL UNION, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, President of the United States of America; MARGARET WEICHERT, Acting Director of the Office of Personnel Management; and UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, <br><br> Defendants. | Case No.: 1:19-cv-01073-WMS <br><br> Hon. William M. Skretny (USDJ) |

**DECLARATION OF SEIU LOCAL 200U PRESIDENT SCOTT PHILLIPSON IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

1

I, SCOTT PHILLIPSON, declare as follows:

1. I am the President of Service Employees International Union Local 200United ("SEIU Local 200U"). I am an attorney admitted to practice in the State of New York with a J.D. from Syracuse University. I make this declaration based on my personal knowledge, in support of Plaintiffs Motion for Preliminary Injunction in this lawsuit.

2. SEIU Local 200U is an unincorporated association and labor organization that is the exclusive bargaining representative for approximately 15,000 public and private-sector employees throughout Upstate New York, Pennsylvania, and Vermont. SEIU Local 200U, on behalf of the bargaining unit employees it represents and by and through its officers and representatives, promotes organized labor and advocates for workers' rights, fairness in the workplace, and the improvement of government service.

3. SEIU Local 200U represents several units of federal employees employed by the United States Department of Veterans Affairs ("VA").

4. SEIU Local 200U or its predecessor unions has been chosen by two bargaining units of federal employees at the VA medical facility in Buffalo, New York, as their exclusive bargaining representative: the Service and Maintenance Unit and the Professional Unit. SEIU Local 200U has represented these units for more than thirty years.

5. The Buffalo VA Service and Maintenance Unit consists of federal employees who occupy a wide range of important service jobs at the VA, including but not limited to, Medical/LPN and NAs, Housekeeping, Nutrition and Food, and Police. These men and women play an important role in serving this country's veterans who need the services of the Buffalo VA.

6. For example, the bargaining unit employees represented by SEIU Local 200U provide the front line service and direction for veterans' medical needs. Bargaining unit members are the ones who greet the veterans, direct them to the appropriate locations for service, and get the process going of providing medical care. Bargaining unit LPNs and NAs begin the first steps of care. From the time the veterans arrive until the time they leave, housekeeping and food service employees are working to give the veterans the feeling of being home. Many of the individuals in this bargaining unit are veterans themselves, and their federal employment is an extension of their service to our country.

7. SEIU Local 200U is the representative, and serves the needs of the entire Buffalo VA Service and Maintenance Unit, regardless of union membership, as it does for all of its federal employee units.

8. The Buffalo Professional Unit consists of federal employees who perform the following types of important services at the Buffalo VA: Audiologists, Speech Pathologists, Pharmacists, Social Workers, Rehabilitation, Laboratory, Psychologists. These men and women also play important roles in serving this country's veterans who need the services of the Buffalo VA. These bargaining unit employees provide a higher level of care. They are licensed providers for treating the veterans who have a specific medical need. For example, if a veteran is admitted into the hospital with stroke symptoms, a Speech Pathologist might evaluate the veteran for swallowing as well as providing other exams and treatment. Many of the individuals in this unit are also veterans themselves, and their federal employment is an extension of their service to our country.

9. SEIU Local 200U has been chosen by federal employees at the Canandaigua VA facility to be their exclusive bargaining representative. SEIU Local 200U has represented these units for more than 25 years.

10. The bargaining unit of federal employees represented by SEIU Local 200U at the Canandaigua VA (the "Canandaigua VA Unit") consists of federal employees who perform the following types of important services, including but not limited to: Audiology, Pathology/Laboratory, Pharmacy, Rehabilitation, Prosthetics, Medical/LPN and NAs, Housekeeping, Nutrition and Food, Police and Firefighters. These men and women also play important roles in serving this country's veterans who need the services of the Canandaigua VA. In addition to the services to veterans described in paragraph 5 for the Buffalo VA, this bargaining unit contains Police and Firefighters who provide essential law enforcement, safety and emergency response services for this large campus in Canandaigua. As with the Buffalo VA units, many of the individuals in this unit are also veterans themselves, and their federal employment is an extension of their service to our country.

11. SEIU Local 200U also represents federal employees at the VA facility in Albany, New York. That unit consists of individuals who perform the same types of as the employees at the Buffalo VA.

12. SEIU Local 200U also represents federal employees at the VA facility in Erie, Pennsylvania. That unit consists of individuals who perform the same job classifications and duties as the Buffalo VA.

13. At the Erie, Pennsylvania, VA, SEIU Local 200U also represents an RN unit. These nurses provide critical services for the veterans on a daily basis. They are hands-on with the veterans and work side by side with the doctors in the veterans' daily treatment.

14. SEIU Local 200U also represents federal employees at the VA facility in Syracuse, New York. That unit consists of individuals who perform the same job classifications and functions as the Buffalo VA. The Syracuse VA also has an RN unit like the one described above.

15. SEIU Local 200U represents approximately 6,000 federal employees at these worksites which have approximately 90 different locations including hospitals and clinics through the states of New York, Pennsylvania, and Ohio.

16. SEIU Local 200U is affiliated with, but is a legally independent association from the Service Employees International Union. SEIU Local 200U has officers consisting of President, Executive Vice President, Secretary-Treasurer, Recording Secretary, Sergeant-At-Arms, and an Executive Board. SEIU Local 200U is governed by its Bylaws. Pursuant to these Bylaws, decisions are made for SEIU Local 200U by these officers and Executive Board members.

17. SEIU Local 200U is a labor organization subject to the Federal Service Labor Management Relations Statute ("FSLMRS") for its representation of federal employees, including as the exclusive bargaining representative for the Buffalo VA Units and Canandaigua Unit, chosen by the employees pursuant to 5 U.S.C. §7111. I am generally familiar with the requirements of these laws in my role as President of SEIU Local 200U.

18. I have been President of SEIU Local 200U since 2013. As President, I am the principal executive officer of the union and am employed by the union to exercise general supervision over the affairs of SEIU Local 200U. I am not employed or paid by the federal government or the Veterans Administration. I am an independent, elected officer with authority over more than 200 bargaining units in both the public and private sectors. This authority

5

includes grievance and arbitration work and representing the union in negotiations with employers, including the VA.

19. In the course of my duties as President of SEIU Local 200U, I have direct personal knowledge of, and have directly been involved in, Local 200U's representation of federal government employees, including through collective bargaining, grievances on behalf of employees and the union, arbitration, and proceedings before the Federal Labor Relations Authority ("FLRA").

20. I am familiar with the three Executive Orders challenged in this case, and was very concerned about the impact of these Orders on our union and the federal employees we represent. If the federal government is able to implement the Executive Orders, they would fundamentally impair the ability of Local 200U to enforce the terms of our collective bargaining agreements, and would limit our ability to represent members in grievance actions, arbitrations, formal discussions, and investigative interviews. These Orders, if implemented, would also fundamentally interfere with the rights that the federal employees we represent are currently given under federal law.

Official Time

21. Members of the federal employee bargaining units that we represent elect bargaining unit officers and stewards who receive official paid time to engage in activities that are related to union representation or employee grievance proceedings. These bargaining unit officers and stewards may prepare proposals for negotiations, respond to management inquiries about working conditions, attend negotiation meetings with VA administration over daily changes in working conditions, investigate and file grievances on behalf of bargaining unit employees, participate as representatives of employees in disciplinary or other investigatory

meetings, participate in proceedings before the FLRA, the federal Occupational Safety and Health Administration, and Merit Systems Protection Board.

22. The purpose of the use of official time is to work with the Administration to recognize that the veterans' interests demand the highest standards of employee performance and implementation of modern and progressive work practices to facilitate and improve employee performance and the efficient accomplishment of the operations of Government. The VA and the union agree that a constructive working relationship between labor and management is essential to achieving the VA's mission to give quality care and to serve veterans while at the same time ensuring a quality environment for all employees.

23. In my experience, official time is absolutely crucial for SEIU Local 200U to meet its obligations to its bargaining unit members under the applicable federal statutes. SEIU Local 200U is obligated to and proudly represents all employees without regard to their union membership, including in grievance proceedings, bargaining, and all of the types of important work described above. Bargaining unit officers, stewards and other bargaining unit members are able to carry out this obligation on behalf of federal employees through the use of official time.

24. SEIU Local 200U has only two paid employees to perform the work required for its federal employee members. One is myself, as described herein, and the other is a union business agent, who has other responsibilities than representing VA employees. The union business agent is not a federal employee or paid by the VA. Rather, he is an employee of SEIU Local 200U and works under my supervision. Without the work of bargaining unit members on official time, we would not be able to adequately perform our crucial role.

25. For example, section 4(a) of the Official Time Order (Executive Order No. 13837) prohibits employees from using official time to participate in representational functions,

grievance proceedings other than their own (or as a witness to another employee's grievance), and contract enforcement. These are all *rights* under the applicable statutes.

26. Members of SEIU Local 200U's federal bargaining units use official time to participate in both grievances and representing other workers. SEIU Local 200U does not have the paid staff to perform all of this work. This Executive Order hamstrings our union and federal employees in their ability to work together with management to provide and improve patient care for the veterans we serve.

27. The pursuit of grievances is necessarily time-consuming. Union representatives must investigate the grievance by interviewing the affected employees and any witnesses, draft grievance documents, and meet with the VA as part of the intermediate grievance resolution steps. Because the Executive Order eliminates the use of official time that would have been used to resolve grievances before the steps of mediation and arbitration, the result would be a large increase in cost to the federal government to take the grievance to mediation or arbitration. If grievances are not resolved at the lower levels, more grievances will be sent to arbitration, and the Government will be obligated to share the cost of arbitration to pay their attorneys and arbitrators to resolve these grievances.

28. To the extent that federal employees cannot participate in grievance resolution, the union and the employees it represents will be irreparably harmed in their ability to present and redress grievances to the Government, which is a fundamental reason to associate with a union for representational purposes.

29. Grievances are crucial to SEIU Local 200U's ability to enforce its collective bargaining agreements. A grievance is defined in our contracts as any complaint by an employee concerning any matter relating to the employment of the employee and by the Union concerning

a matter relating to the employment of any employee. A grievance may concern the interpretation or application of any law, rules, regulation or policy affecting the conditions of employment of bargaining unit employees. The Executive Order irreparably limits SEIU Local 200U's ability to present and process grievances for redress on behalf of federal employees.

30.     Likewise, section 4(a) introduces a hard cap on the amount of official time available employees acting as union representatives, restricting the employees to no more than 25% per fiscal year for union-related work that that these Orders define to be not proper official duties (and counting any time over that amount towards the cap for the next fiscal year).

31.     This cap would force SEIU Local 200U to restructure its approach to collective bargaining. SEIU Local 200U negotiates separate collective bargaining agreements at each of the five VAs we represent. Every three years, Local 200U renegotiates or rolls over its collective bargaining agreements with the VAs. This is necessarily a time-consuming process which may take several months or even years and generally requires the approximate four members of the bargaining team to expend approximately eight to 16 hours per week participating in those negotiations. The statute caps the use of union representatives to be equal to the number of management representatives in bargaining. By limiting the total amount of official time available to bargaining team members to 25% of their total on-duty time, section 4(a) will require Local 200U to restrict its time in bargaining, or reduce the amount of time that our union representatives will have to be able to perform other important union-related tasks. The cap in time also leaves no time for bargaining preparation, which limits the ability of federal employees to participate in the development of their proposals and present them to the VA for consideration. The employees effectively lose their voice in development of proposals that would be beneficial for their working conditions and the betterment of patient care.

32. I understand that the Official Time Executive Order also purports to create a mandatory aggregate ratio for official time bargaining unit wide of 1:1 for official time hours to number of members of the unit. For each of our VA bargaining units, this ratio would not work. In recent bargaining, we have always complied with the statutory requirement of having the same or fewer number of negotiators as management (who are, of course, all paid for this time). However, the process in the federal sector is different than that of the private and other public sectors, as the contracts for our VAs have to be approved by the VA's Office of Labor Management Relations and can be sent back for deficiencies that require renegotiation This causes large amounts of additional time to be necessary to reconsider proposals and work them out with the administration.

33. The individual employee caps and the aggregate ratio cap will interfere with our union's ability to choose the best individuals to perform the representative work that is needed to best represent the members of our bargaining unit. That choice is central to our right as an association to choose how to conduct our affairs and representational duties, and thereby interfere our right to associate.

34. The use of official time is not evenly spread across members of each bargaining unit. SEIU Local 200U relies on the experience and knowledge of certain individuals, in the interest of efficiency and providing the best representation possible when we can. The learning curve is substantial for some of these types of tasks, and it would be completely inefficient to require us to spread this work to more, rather than fewer, individuals. The bargaining unit members who act in a representative capacity for other federal employees for SEIU Local 200U often have substantial experience in such matters, and it would take someone who had no experience *far* longer to prepare for and perform these important tasks. If the caps or individual

restrictions on use of official time were to cause SEIU Local 200U to have to spread this work across less experienced individuals, the result would be *more* not less official time needed to achieve the same result.

35. The current system, as Congress intended, allows the vast majority of our bargaining unit members to focus on their civil service employment, while ensuring some experienced union representatives, to have institutional knowledge and a deep understanding of the complex collective bargaining agreement and rules that pertain to grievances, arbitrations, and bargaining, so they can efficiently perform these duties and fulfill our union's duty to represent bargaining unit members.

36. If SEIU Local 200U's representatives were limited in their ability to be paid for union-related time as these Executive Orders attempt to do, this would significantly and irreparably shift the balance in favor of management in many different ways. We would be hampered in our ability to perform important work required to represent all bargaining unit members. If there is insufficient time to negotiate a contract, management will have the ability to unilaterally implement the terms of a complete agreement, thereby depriving the bargaining unit employees of a voice in determining their terms and conditions of employment, which will, in turn, affect employees' rights and patient care. Efficient labor management relations provide the bargaining unit representative federal employees with more time to devote to patient care.

37. In my experience and to my understanding, *all* of the management-level VA officials or employees engaged in the type of activities for which our VA employee bargaining unit members use paid official time (grievance, arbitration, bargaining, other forms of representation and/or meetings with VA management), are being paid for the time they spend on these activities. Their sole function is to represent the agency, and they do not have their time

divided between labor-management relations and a job related to patient care. Our bargaining unit leaders have jobs related to patient care.

Permissive Bargaining

38. The Executive Orders take *all* subjects of permissive bargaining completely off the bargaining table by prohibiting negotiations over those subjects. SEIU Local 200U will be prohibited from bargaining with the VA for our bargaining units over a variety of permissive subjects, which restricts our voice and ability to represent the interests of the bargaining unit employees.

39. Preventing negotiation over these topics of bargaining will damage SEIU Local 200U's relationship with its members, and could ultimately erode union support and the union's associational and speech rights.

Performance Evaluations and Removal Procedures

40. The member of the VA bargaining units we represent have always been subject to the rules for civil service employment set forth in the CSRA, including progressive discipline, and the availability of what is known as a performance improvement plan, or PIP.

41. The Executive Orders, if implemented, will require the VA to limit any PIP to 30 days or less, and will prohibit the VA from engaging in progressive discipline, which benefits federal employees through corrective actions. This also benefits the taxpayer and the veterans by keeping experienced and knowledgeable employees employed and contributes to overall improvement in patient care.

42. More than 40 percent of our employees at the VA's are veterans who have returned from active duty and then become employed at the VA. These veterans may suffer from chronic conditions, which may require them to take a longer time to learn their job

functions. These dedicated veteran employees need a longer process in place for education or re-education before being removed from a position at the VA.

43. The Executive Orders would also eliminate the Union's ability to file a grievance on behalf of an employee if the employee were to be removed or disciplined for performance, over performance evaluations, incentive pay, and step increases.

44. Employees who have been unjustly discharged or disciplined will lose the Union's representation at this crucial point in time, which is their only viable opportunity to have their discharge or discipline investigated, grieved, and possibly reduced or reversed. These employees are irreparably harmed because they have lost their associational rights having chosen the Union to act on their behalf to vindicate their rights and present their grievances to the Government.

45. The Executive Orders impose artificial and arbitrary new rules for collective bargaining that undermines the duty to bargain in good faith, which requires entering negotiations with an open mind and flexibility and the desire to reach a fair and balanced agreement.

46. For example, the requirement that parties exchange *only* written proposals is not consistent with the duty to bargain in good faith. In my extensive bargaining experience, parties need to be able to discuss proposals *while bargaining*. Requiring the parties to stop and create written proposals, will only cause undue delays and interfere with the ability of the parties creatively to reach agreements or be responsive to the other side's concerns through mutual problem solving. Collective bargaining does not work this way, and imposing such a requirement will greatly hinder the ability to reach agreement.

47. Such delays will exhaust the applicable time frames and enable the VA to have greater opportunity to unilaterally impose an agreement taking away many of the rights of employees to negotiate their terms and conditions of employment. The artificial time frames imposed on bargaining for every unit, regardless of the size or complexity of the issues, will not promote bargaining in good faith.

48. In my experience, the union and the VA have had success in engaging in an issues-based approach to bargaining on the local level where the parties first tackle issues important to the employees and veterans and then arrive at language at the end of negotiations. This is the intent of the SEIU Local 200U's locally based agreements, which are what the employees have ratified. If this new centralized approached as set forth in the Executive Orders is adopted, the employees' voice will have been extinguished.

Collective Bargaining Subjects and Bargaining Leverage

49. These Executive Orders collectively remove a host of subjects from collective bargaining and direct agencies to insist on particular proposals. In my extensive bargaining experience, one party mandating the outcome of bargaining is not consistent with bargaining in good faith. Parties must approach bargaining with an open mind and the ability and authority to modify their positions to accommodate the other side's concerns. All of these provisions attempt to dictate the outcome of bargaining, and that is directly contrary to the purpose of collective bargaining, particularly in the federal sector.

50. Congress provided federal employees with a system of bargaining that permits them to have a voice and influence the outcome by first imposing the duty to bargain in good faith and, second, providing for interest arbitration (in exchange for eliminating federal employees' right to strike). In my experience, the inflexibility and elimination of discretion by

dictating bargaining outcomes described in these Orders is inconsistent with effective good faith bargaining.

51. If the union were forced to change the status quo methods and procedures of bargaining and then later the Executive Orders structures were struck down by this Court, this would cause extreme fiscal mismanagement and be irresponsible with the taxpayers' monies.

52. If we are not able to bargain over the full range of subjects permitted by law, I believe that could negatively impact support for our union among these bargaining units. Federal employee support is directly linked to the benefits we are able to achieve through bargaining and effective representation. Our union would be irreparably harmed if our member support were diminished because these Executive Orders interfered with our ability to bargain benefits for employees and represent them in grievances and other proceedings.

Office Space

53. SEIU Local 200U has long been able to use office space at each of the represented VA facilities without cost. The Executive Orders would deprive the represented employees of access to the Union services by eliminating these offices. The union currently occupies offices in space in each of the VAs that are not used for patient care and are unoccupied by other VA services. These offices are not being otherwise used by the VA and provide essential space for labor-management meetings. These areas are used to talk with management and are essential because we cannot have these meetings in any area that is used for patient care.

54. If SEIU Local 200U were required to pay substantial amounts of money to use these facilities, we would not do so and would vacate these offices depriving employees and management of access to the Union,

SEIU Local 200U Current Bargaining Agreements

55. Each of SEIU Local 200U's federal employee units are governed by a collective bargaining agreement previously negotiated with the VA that has a three-year term. One of SEIU Local 200U's federal employee units is in bargaining or soon will be in bargaining. If OPM is able to direct federal agencies to immediately implement these Executive Orders, our ability to bargain agreements in our unit members' benefit will be greatly curtailed for all the reasons I have discussed in this declaration.

56. The Buffalo VA Professional Unit's current Collective Bargaining Agreement has a three-year term. We began bargaining for our next agreement on January 27, 2016, and bargaining has continued until impasse was reached on April 12, 2019. Under federal law, we first attempted to send that dispute to the Federal Service Impasse Panel, where it is currently pending because there is not a quorum of members. If the Impasse Panel implements the Executive Orders at OPM's direction, that unlawful framework will preclude SEIU Local 200U from obtaining, on behalf of the Buffalo VA employees we represent, important rights and benefits that it might otherwise be achieved under the existing bargaining proposals.

57. If OPM and the federal agencies are able to move forward implementing these Executive Orders, any future bargaining will, in my experience, irreparably harm the Union and employee representational rights. The employer will have refused to bargain over any permissive subject, will insist on the outcome of bargaining on a whole host of subject like official time and the scope of the negotiated grievance provision, will impose arbitrary and artificial rules that harm federal employees the balance of labor-relations intended by Congress, and, if our union negotiators have already reached their 'cap' on official time, will effectively dictate who we are able to utilize to represent our union and employees in bargaining.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Syracuse, New York, on September 9, 2019.

_____
Scott Phillipson
President, SEIU Local 200U