# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

SERVICE EMPLOYEES
INTERNATIONAL UNION LOCAL
200UNITED, and
SERVICE EMPLOYEES
INTERNATIONAL UNION,

               Plaintiffs,

v.

DONALD J. TRUMP, President of the United
States of America; MARGARET
WEICHERT, Acting Director of the Office of
Personnel Management; and UNITED
STATES OFFICE OF PERSONNEL
MANAGEMENT,

               Defendants.

Case No.: 1:19-cv-01073-WMS

Hon. Elizabeth A. Wolford (USDJ)

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## MOTION FOR TEMPORARY RESTRAINING ORDER AND,
## IF NECESSARY, FOR AN EXPEDITED HEARING ON PLAINTIFFS'
## PRELIMINARY INJUNCTION MOTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 4

ARGUMENT ....................................................................................................................... 6

    I.      Plaintiffs Are Very Likely to Succeed on the Merits of Their APA Claims .......... 6

           A.        OPM Will Violate the Requirement of Notice and Comment
                     Rulemaking.......................................................................................... 8

           B.        Plaintiffs Are Also Likely to Succeed on Their Claim That
                     Agency Action Implementing These Orders is Contrary to Law ....... 10

    II.     Because OPM Seeks to Immediately Implement the Previously Enjoined
          Orders, Federal Employees Will Suffer Irreparable Harm ................................... 12

    III.   Defendants Will Suffer No Harm in Maintaining the Long-Standing
          Status Quo............................................................................................................ 14

    IV.   The Public Interest Weighs Heavily in Favor of Enjoining the
          Implementation of these Orders Pending the Resolution of Plaintiffs'
          Motion for a Preliminary Injunction .................................................................... 15

    V.     Plaintiffs Move, if Necessary, to Expedite the Hearing on the Motion for
          Preliminary Injunction ......................................................................................... 15

CONCLUSION.................................................................................................................. 16

# TABLE OF AUTHORITIES

**Federal Court Cases**

*AFGE v. Trump*,
   318 F. Supp. 3d 370 (D.D.C. 2018) ................................................................ 1, 5, 10

*AFGE v. Trump*,
   929 F.3d 748 (D.C. Cir. 2019) ........................................................................ 1, 5, 10

*Am. Fed'n of Labor v. Watson*,
   327 U.S. 582 (1946) ............................................................................................ 13

*BATF v. FLRA*,
   464 U.S. 89 (1983) ................................................................................................ 4

*Chamber of Commerce of U.S. v. Reich*,
   74 F.3d 1322 (D.C. Cir. 1996) .............................................................................. 7

*Clarke v. Ofc. of Fed. Housing Enterp. Oversight*,
   355 F. Supp. 2d 56 (D.D.C. 2004) ...................................................................... 15

*Donovan v. Red Star Marine Servs., Inc.*,
   739 F.2d 774 (2d Cir. 1984) .................................................................................. 8

*NTEU v. Chertoff*,
   452 F.3d 839 (D.C. Cir. 2006) ............................................................................ 13

*NTEU v. Helfer*,
   53 F.3d 1289 (D.C. Cir. 1995) .............................................................................. 7

*NTEU v. U.S. Dept. of Treasury*,
   838 F. Supp. 631 (D.D.C. 1993) ......................................................................... 14

*Pan American World Airways, Inc. v. Flight Engineers' Int'l Ass'n*,
   306 F.2d 840 (2d Cir.1962) ............................................................................... 2, 6

*Pennsylvania v. President United States*,
   930 F.3d 543 (3d Cir. 2019) ........................................................................ 7, 8, 10

*Securities and Exchange Comm'n v. Morgan*,
   2019 WL 2385395 (WDNY June 5, 2019) ............................................................ 6

*Time Warner Cable Inc. v. F.C.C.*,
   729 F.3d 137 (2d Cir. 2013) ............................................................................... 7, 8

*Warner Bros. Inc. v. Dae Rim Trading, Inc.*,
   877 F.2d 1120 (2d Cir.1989) .............................................................................. 2, 6

*White v. Shalala*,
  7 F.3d 296 (2d Cir. 1993) ........................................................................ 8

## Federal Statutory Authorities

5 U.S.C. §500 *et seq.* ........................................................................... 1

5 U.S.C. §551 ........................................................................................ 7

5 U.S.C. §553 ................................................................................ 7, 8, 10

5 U.S.C. §706(2) ................................................................................ 2, 7

5 U.S.C. §1101 *et seq.* ...................................................................... 4, 5

5 U.S.C. §1103 .................................................................................. 5, 7

5 U.S.C. §1104 ..................................................................................... 5

5 U.S.C. §1105 ..................................................................................... 7

5 U.S.C. §7101 et seq. ........................................................................... 4

5 U.S.C. §7102 ................................................................................... 11

5 U.S.C. §7103(a)(9) ........................................................................... 10

5 U.S.C. §7106(b) ............................................................................... 11

5 U.S.C. §7114 ................................................................................ 4, 11

5 U.S.C. §7121 ................................................................................ 4, 11

5 U.S.C. §7131 ................................................................................ 9, 11

## Federal Rules and Regulations

Fed. R. Civ. P. 65 ............................................................................. 3, 15

Local Rule 7(d)(1) ................................................................................. 4

Local Rule 65(b)(2)(A) ...................................................................... 3, 15

## Treatises

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, §2951 (2d
  ed. 1995) ............................................................................................ 6

# INTRODUCTION

Plaintiffs bring this Motion for a Temporary Restraining Order ("TRO") to maintain the status quo pending this Court's resolution of Plaintiffs' Motion for Preliminary Injunction.  On September 12, 2019, Plaintiffs moved this Court for a preliminary injunction to enjoin Defendants Office of Personnel Management ("OPM") and OPM's Acting Director from implementing three Executive Orders as unlawful because agency implementation of the Orders will violate the Administrative Procedure Act ("APA"), 5 U.S.C. §500 *et seq.*  Dkt. #20. Implementation of the challenged Executive Orders is now days away as the result of a decision by the D.C. Circuit on September 25, 2019.  The imminent implementation of the Executive Orders threatens to nullify long-standing statutory civil service protections for federal employees and to undermine the system of labor-management relations long ago established by Congress.

A previous injunction prohibiting the Administration from implementing the challenged Orders has been in place since August of 2018.  *AFGE v. Trump*, 318 F. Supp. 3d 370 (D.D.C. 2018).  However, the D.C. Circuit on July 16, 2018 decided to vacate that injunction on jurisdictional grounds not relevant here.  *AFGE v. Trump*, 929 F.3d 748 (D.C. Cir. 2019).  At the time Plaintiffs filed their Motion for Preliminary Injunction, the D.C. Circuit had withheld its mandate pending resolution of a petition for rehearing *en banc*.  Leonard Decl. in Supp. of TRO, Exh. A.  Yesterday, however, the D.C. Circuit denied the *en banc* petition, and that Court's mandate will issue on October 2, 2019, dissolving the injunction.  *See id.*, Exhs. A, B.  The federal government will then begin implementing the Orders in violation of the APA.  That unlawful implementation should be enjoined and the status quo maintained:  There is no valid reason to permit the Administration to begin upending the system of labor-management relations that has been in place for more than 40 years; implementation will violate federal law; and Plaintiffs will suffer irreparable harm as a result.

As Plaintiffs explained in detail in their Memorandum in support of their Motion for Preliminary Injunction, the three Executive Orders at issue seek to undermine statutory protections for federal civil service employees that have kept the civil service merit-based and

largely politics-free for decades.  *See* PI Mem (Dkt. #20-1) at pp. 2-11, and Appendix ("App.") 1-3 (attaching Executive Order Nos. 13,836, 13,837, and 13,839, collectively the "Executive Orders").  The Executive Orders are an effort to make statutory changes without required congressional authorization.  The Orders mandate agency action that violates the procedural requirements of the APA and agency action that violates the APA because it is contrary to governing law.  Congress, through the APA, has given this Court authority to prohibit such unlawful agency action.  5 U.S.C. §706(2).  Plaintiffs also explained in their Memorandum how implementation will adversely impact federal employees and the labor unions they have formed in ways that cannot be later remedied.  PI Mem at pp. 22-24.

As courts in this Circuit have frequently observed, "[t]he purpose of a temporary restraining order is to preserve an existing situation *in statu quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction."  *Warner Bros. Inc. v. Dae Rim Trading, Inc*., 877 F.2d 1120, 1125 (2d Cir.1989) (*quoting Pan American World Airways, Inc. v. Flight Engineers' Int'l Ass'n*, 306 F.2d 840, 842–43 (2d Cir.1962)).  When the D.C. Circuit's mandate issues on October 2, 2019, the Administration will be free to (and has given every indication that it will) resurrect its previous instructions to federal agencies to take unlawful action.  The implementation dates under the express terms of these Orders have long-since passed, and the Administration has not been shy about its intent to implement the Orders immediately.  When the Administration unsuccessfully moved the D.C. Circuit to expedite issuance of its mandate, the Administration represented that agency officials were enjoined from engaging in implementation conduct that they would otherwise engage in right away in ongoing negotiations.  D.C. Circuit Case No. 18-5289 Doc. #1800975 at 1; *id*. at 3 ("The government is seeking relief precisely because of effects that the injunction has on ongoing negotiations over new collective-bargaining agreements.").

Plaintiffs respectfully ask this Court to maintain the status quo by prohibiting implementation of these Orders for the short period required for the Court to resolve Plaintiffs' Motion for Preliminary Injunction, which is currently scheduled for hearing on November 1,

2019. Dkt. #25. Rather than present this Court with an emergency request to resolve that Motion within the next six days, Plaintiffs instead submit that a short TRO to maintain the status quo will provide this Court and the parties with sufficient time to brief and resolve the important issues raised by Plaintiffs' Motion.

Plaintiffs have also moved for an Order expediting the hearing on their Motion for Preliminary Injunction in the event the Court does not issue a TRO that extends through the current November 1 hearing date. Federal Rule of Civil Procedure 65 limits TROs to no more than fourteen days when granted without notice, but that Rule does not appear to impose any similar fourteen-day limitation on TROs that are requested *with* notice, as here. Plaintiffs, however, observe that this Court's Local Rule of Civil Procedure 65 could be read as requiring that any TRO comply with Federal Rule of Civil Procedure 65(b)(2), which imposes the fourteen-day limit for TROs without notice. *See* Local Rule 65(b)(2)(A) (incorporating requirement that Plaintiffs file proposed order that complies with FRCP 65(b)(2)). Therefore, in the event the Court concludes it cannot issue a TRO that extends through the currently scheduled hearing date for Plaintiffs' Motion for Preliminary Injunction, Plaintiffs also move to expedite the hearing on Plaintiffs' Motion for Preliminary Injunction so that it may be resolved by no later than October 16, 2019, which is fourteen days after the October 2, 2019 date on which the D.C. court's injunction will dissolve.

Counsel for Plaintiffs met and conferred with counsel for Defendants with respect to this motion following the D.C. Circuit's Order on September 25, 2019. Leonard Decl. in Supp. of TRO ¶¶4-9. Defendants declined to hold implementation of the challenged Executive Orders pending resolution of Plaintiffs' Motion for Preliminary Injunction, which would have obviated the need for this motion for temporary relief. *Id.* ¶9. Counsel likewise met and conferred with respect to the schedule set forth in the accompanying Motion for Expedited Hearing of this motion pursuant to Local Rule 7(d)(1). *Id.* ¶¶4-9. As set forth in that motion, Defendants are able to file a response by Monday, September 30, 2019, but otherwise oppose Plaintiffs' proposed schedule. *Id.* ¶9. Finally, counsel met and conferred with respect to Plaintiffs'

contingent request for an expedited hearing on Plaintiffs' Motion for Preliminary Injunction to permit resolution before October 16, 2019 if necessary. *Id.* ¶¶4-9. Defendants have no objection to Plaintiffs' proposed schedule, other than a noted scheduling conflict with respect to the hearing dates. *Id.* ¶9.

## BACKGROUND

The federal civil service system is governed by statutes enacted in the 1970s to protect career federal employees from the kind of political interference and related uncertainty that had long plagued the federal government. PI Mem. at pp. 3-4; *see* 5 U.S.C. §1101 *et seq.* (the Civil Service Reform Act of 1978 or "CSRA").[1] In particular, Congress enacted Title VII of the CSRA, known as the Federal Service Labor-Management Relations Statute ("FSLMRS"), to govern labor-management relations for federal employees. *See* §7101 *et seq.*; *BATF v. FLRA*, 464 U.S. 89, 91 (1983) (the FSLMRS was "the first statutory scheme governing labor relations between federal agencies and their employees."). Significantly, the FSLMRS guarantees federal employees the right to choose to be represented by a labor organization and to be protected in the exercise of that right, §7102; and imposes significant responsibilities on labor representatives, §§7114, 7121, including the duty to represent all employees in a bargaining unit regardless of membership, §7114(a)(1). Congress expressly found that giving employees the right to act as representatives and to bargain collectively was in the public interest. §7101(a)(1).

President Trump's three Executive Orders aimed at federal employees and the labor unions they have formed seek to overturn many of the statutory provisions set forth in the above laws. The overall impact of the Orders is to eliminate important employee protections guaranteed by statute, to prevent federal employees from exercising their right to act as union representatives on behalf of their co-workers, and to undermine collective bargaining in violation of the statute by directing agencies to refuse to bargain over some issues and to insist on pre-determined outcomes as to other issues. *See* PI Mem. App. 1-3; PI Mem. at pp. 5-11.

---

[1] All further statutory citations are to Title 5 of the U.S. Code unless otherwise noted.

These Executive Orders cannot be implemented without federal agency action, and they delegate responsibility to OPM for implementation and for the provision of direction to employing agencies, consistent with OPM's statutory authority to execute and administer the "President's rules" for the civil service workforce. *See* §§1101, 1103, 1104. Accordingly, OPM issued three Guidances in July 2018 that incorporate the rules and requirements set forth in the Orders and state, consistent with the language of the Orders, that most provisions are either immediately effective, effective within 45 days of the Orders, or effective as soon as a collective bargaining agreement comes up for negotiation (which could be immediately). PI Mem. App. 1-3; Leonard Decl. in Supp. of PI Mot. (Dkt. #20-10), Exhs. A, C, and E. The Orders and the OPM Guidances acknowledge that formal rule-making may possibly occur for some provisions, but only *after* implementation. *Id.*

OPM and the President's subordinates were quickly enjoined, on August 25, 2018, from "implementing or giving effect to" many provisions of the Executive Orders by the D.C. District Court because the Orders conflict with the CSRA and FSLMRS. *AFGE*, 318 F. Supp. 3d at 440. That injunction has remained in place to date as the parties to that case litigated the appeal. On July 16, 2019, the D.C. Circuit reversed the injunction on jurisdictional grounds that do not apply to the APA claims brought here. *AFGE*, 929 F.3d at 761; *see* PI Mem. at pp. 21-22. The Court withheld issuance of its mandate, however, to permit resolution of any *en banc* petition (and thereby kept the injunction in place). Leonard Decl. in Supp. of TRO, Exh. A. On September 25, 2019, the D.C. Circuit denied the pending *en banc* petition, and as a result, the mandate will issue in seven days, on October 2, 2019. *Id.*, Exh. B.

OPM has been very clear—including in a recent unsuccessful motion to expedite the mandate for the D.C. Circuit decision—that it intends to return immediately to implementation once the mandate issues from the D.C. Circuit and the District Court's injunction is lifted. Leonard Decl. in Supp. of PI ¶11; D.C. Circuit Case No. 18-5289 Doc. #1798620 (Mot. to Expedite Mandate) at 2-6; D.C. Circuit Case No. 18-5289 Doc. #1800975 (Reply in Support) at 1-3. Consistent with that position, Defendants here declined to agree to delay implementing

these Orders pending resolution of Plaintiffs' Motion for Preliminary Injunction. Leonard Decl. in Supp. of TRO ¶9.

**ARGUMENT**

Just as the Plaintiffs' motion for preliminary injunction seeks to maintain the status quo system of civil service protections and labor-management relations that has been operative for more than 40 years, this motion seeks short temporary relief that will maintain that status quo while the parties and the Court brief and resolve Plaintiffs' request for an injunction. *Warner Bros.*, 877 F.2d at 1125 (purpose of TRO to maintain status quo pending resolution of preliminary injunction); *Pan American World Airways*, 306 F.2d at 842–43 (same); 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §2951, at 253 (2d ed. 1995) ("The [temporary restraining order] is designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction. . . ."). The factors that govern this Court's discretion to issue such temporary relief maintaining the status quo are similar to those that apply to a request for a preliminary injunction: "Generally, a party seeking a preliminary injunction or a temporary restraining order must demonstrate: that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Securities and Exchange Comm'n v. Morgan*, 2019 WL 2385395 (WDNY June 5, 2019) (quotations omitted).

Each of these factors weighs strongly in favor of enjoining the implementation of the challenged Orders from October 2, 2019 through the resolution of Plaintiffs' Motion for Preliminary Injunction set to be heard by this Court on November 1, 2019.

## I.     Plaintiffs Are Very Likely to Succeed on the Merits of Their APA Claims

Plaintiffs contend that the action required to implement these Orders violates multiple provisions of the APA, including the procedural requirements for notice-and-comment rule-making, as well as the provisions that prohibit agency action that is contrary to law and in excess

of statutory authority.  Plaintiffs' APA arguments are detailed in their Memorandum in support of the preliminary injunction motion and are summarized below.

The Executive Orders in question will be implemented by Defendant OPM, and OPM is an "agency" subject to the requirements of the APA, *e.g.*, *NTEU v. Helfer*, 53 F.3d 1289, 1292-93 (D.C. Cir. 1995).  Notably, Congress, when it created OPM, specifically incorporated the APA's requirements for any rules promulgated by OPM that apply to federal employees beyond "the Office or its employees." §1103(b); *see also* §1105.  Moreover, although the APA does not apply directly to actions by the President, it does apply to agencies when they take any action to implement Executive Orders, and Executive Orders cannot be used to achieve an end-run around the APA.  *See, e.g.*, *Pennsylvania v. President United States*, 930 F.3d 543, 568 (3d Cir. 2019) (affirming preliminary injunction enjoining agency action implementing an Executive Order without required notice-and-comment rulemaking); *Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1327 (D.C. Cir. 1996) ("that the Secretary's regulations are based on the President's Executive Order hardly seems to insulate them from judicial review under the APA, even if the validity of the Order were thereby drawn into question").

The APA imposes both procedural requirements for agency action and mandates that agency action comply with the law.  §§551, 553, 706(2)(A)-(D).  As is relevant here with respect to procedure, the APA requires federal agencies to go through a formal notice-and-comment process before imposing "rules," which are defined as "the whole or a part of an agency statement of general or particular applicability and future effect …." §551(4); §553; *Time Warner Cable Inc. v. F.C.C.*, 729 F.3d 137, 167 (2d Cir. 2013).  When an agency attempts to issue and implement rules without the required notice and comment procedures, the APA authorizes federal courts to "hold unlawful" and "set aside" that action as "without observance of procedure required by law." §706(2)(D).

With respect to rules' content, the APA prohibits agency action that exceeds statutory or constitutional authority or is otherwise contrary to law. §706(2)(A), (C).  Thus, the APA authorizes federal courts to hold unlawful and set aside agency action that is "not in accordance

with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Id*. For example, the Third Circuit recently enjoined agencies from implementing the requirements of an Executive Order because the implementing rules would exceed the agency's statutory authority. *Pennsylvania*, 930 F.3d at 569 (affirming preliminary injunction because interim rules implementing Executive Order were in excess of statutory authority and contrary to law).

A.  OPM Will Violate the Requirement of Notice and Comment Rulemaking

OPM is poised to implement rules that should be subject to notice and comment rule-making without complying with the APA's procedural requirements. PI Mem. at pp. 16-17; §§553, 706(2)(D). As the Executive Orders themselves and OPM's Guidances make clear, implementation will necessarily involve the imposition of new rules that "create new law, rights, or duties," *White v. Shalala*, 7 F.3d 296, 303 (2d Cir. 1993), and "change existing rights and obligations," *Donovan v. Red Star Marine Servs., Inc*., 739 F.2d 774, 783 (2d Cir. 1984), and that therefore require notice-and-comment rulemaking under the APA. *Time Warner Cable*, 729 F.3d at 168.

For example, the Removal Procedures Executive Order (No. 13,389, PI Mem. App. 3) attempts to create new rules for performance-related employee discipline and discharge, including mandating that no agency may permit a performance improvement period of longer than 30 days. PI Mem. App. 3 at §4(c). There are existing OPM regulations that address this requirement that do *not* impose such a rule, but nonetheless, OPM will require agencies to begin implementing this provision after October 2, 2019, without notice and comment rule-making. Likewise, that Order also prohibits agencies from processing any grievances brought by employees over certain performance and pay issues—again a rule that changes rights and obligations and must be subject to notice and comment. PI Mem. App. 3 at §4(a).[2] Likewise,

---

[2] When this Order was issued, OPM directed agencies to implement it in bargaining as soon as possible and within 45 days if not covered by a collective bargaining agreement. Leonard Decl. in Supp. of PI, Ex. E (July 5, 2018 OPM Removal Procedures Guidance). OPM

the Official Time Executive Order (No. 13,837, PI Mem. App. 2) creates new rules that prohibit federal employees from using work time for activities such as representing fellow employees in grievances and arbitrations—activities that employees who serve as union representatives are required to perform by the FSLMRS and that are specifically addressed in the Official Time section of that statute, 5 U.S.C. §7131. *See* PI Mem. App. 2, §4(a)(v). Beginning October 3, 2019, any employee without a specific collective bargaining agreement provision protecting every aspect of official time touched by these Executive Orders, including the new per-employee caps (*id.*, §4(a)(ii)), will be affected. That Order also requires agencies to prohibit the unpaid use of agency offices, telephones, e-mail systems or other resources for union representational purposes (areas and resources necessary for employees to play their congressionally mandated role of representing their fellow employees). *Id.* at §4(a)(iii).[3]

Other rules that these Orders require to be implemented as soon as the injunction is dissolved impact ongoing or upcoming bargaining, including disputes that may be in the early stages of bargaining, in mediation, or before the Federal Services Impasse Panel (which likewise at OPM's direction is poised to implement these Executive Orders). The new legislative rules (created *without and contrary to* legislative authority) in the Collective Bargaining Order (No. 13, 836, PI Mem. App. 1), include a ban on any and all permissive subjects of bargaining. PI Mem. App. 1 §6. As of October 3, 2019, all permissive subjects of bargaining will be off the table for the federal government. Other rules completely eliminating agency discretion in

---

also explained that it might issue formal rules under the Order in the future. But neither the Executive Order nor OPM's Guidance state when OPM intends to propose any rules or identify what areas those rules might cover, leaving agencies in the default position of having to implement all substantive requirements immediately as written and revise their procedures later if OPM ever issues rules.

[3] Some union spaces may be protected in the short-term by specific collective bargaining agreement provisions that will be re-opened by the federal government upon the next upcoming bargaining, but any union that has had access granted by informal rather than formal agreement, or that has an agreement that falls short of protecting everything (i.e., the use of e-mail or phones) covered by the Order, will be impacted on October 3, 2019.

bargaining include rules pertaining to what issues can be subject to grievance and arbitration provisions (PI Mem. App. 3 §3); caps on official time (PI Mem. App. 2 §3); and revisions to employee discipline and discharge provisions (PI Mem. App. 3 §4(b)(i)-(iii)).

The Orders themselves tellingly refer to their requirements as new "rules," *e.g.*, PI Mem. App. 2 §4(c), and, while mandating immediate implementation, acknowledge that formal regulatory action may be needed in the future. *Id*.; PI Mem. App. 3 at §7. If plaintiffs are correct that OPM's directives implementing the Executive Orders impose legislative rules for purposes of the APA (which they do), OPM's procedure – implement now and engage in notice-and-comment rulemaking later – is prohibited. Rules must be subject to meaningful notice-and-comment *before* implementation. §553; *Pennsylvania*, 930 F.3d at 568.

B. <u>Plaintiffs Are Also Likely to Succeed on Their Claim That Agency Action Implementing These Orders is Contrary to Law</u>

The APA also authorizes this Court to hold unlawful and set aside agency action that is contrary to law. OPM's implementation of the provisions of these Executive Orders will violate *many* provisions of the CSRA and FSLMRS.[4]

a. *Employee Discipline and Discharge*. The Removal Procedures Order requires agencies to impose a 30-day limit on performance improvement periods ("PIPs") without regard to whether that length of time is reasonable or is what would result from actual good-faith bargaining, in violation of the CSRA. *AFGE,* 318 F. Supp. 3d at 391. That Order also purports to prohibit agencies from participating in grievances or arbitrations about certain "matter[s] related to . . . employment," such as removals for performance reasons, performance evaluations,

---

[4] The D.C. District Court's ruling that these Orders are contrary to the CSRA and FSLMRS was not reversed by the D.C. Circuit, which only ruled on jurisdictional grounds that do not apply to the APA claims asserted here. *AFGE*, 318 F. Supp. 3d at 418-37; *AFGE*, 929 F.3d at 761; PI Mem. at pp. 21-22. The D.C. District Court's thorough and very considered decision is persuasive authority that these Orders are contrary to law. *AFGE*, 318 F. Supp. 3d at 418-37.

incentive pay, etc., PI Mem. App. 3 §4(a), notwithstanding that the CSRA requires grievance procedures to include such matters, §§7103(a)(9).

b. *Provisions Regarding Employees' Resources to Perform Statutory Duties.* The Official Time Order directs agencies to prohibit employees from using any official time to participate in any grievances involving co-workers, PI Mem. App. 2 at §4(a)(v), notwithstanding that the CSRA guarantees employees the right to act as labor representatives and guarantees employees the right to have a union representative present during grievances and employer investigations, §§7114(a)(2); 7121(b). The Order additionally requires agencies to ban employees from using official time for union-related "First Amendment" activity. *Compare* PI Mem. App. 2 §4(a)(i) with §7102 (guaranteeing employees' "right to present the views of the labor organization" to the employer). The Order also directs agencies to prevent labor representatives from using any office space, computers, or even phones, PI Mem. App. 2 §4(a)(iii), notwithstanding representatives' statutory duty (and right) to represent their fellow employees, §§7102, 7121. And the Order imposes caps on official time even though Congress provided for the amount of such time to be negotiated. *Compare* PI Mem. App. 2 §§3, 4(a)(ii) *with* §7131(d).

c. *New Collective Bargaining Rules.* All three Executive Orders impose new rules for bargaining that violate the CSRA. For example, notwithstanding that Congress made clear agencies' ability to bargain over permissive subjects, §7106(b), and required agencies to negotiate in good faith, §7114, the Collective Bargaining Order directs agencies to refuse to bargain over any permissive subjects at all. PI Mem. App. 1 §6 (prohibiting "negotiat[ing] over the substance of the subjects set forth in section 7106(b)(1) of title 5"). The Official Time Order prohibits agencies from negotiating over the use of official time by a union representative to pursue a grievance on behalf of co-workers, PI Mem. App. 2 §4(a)(v), notwithstanding that such time is a condition of employment about which employees have a statutorily protected right to bargain, §§7103(a)(14), 7131(d). And that same Order sets a low limit on official time overall and bars agencies from negotiating any different amount. *Compare* PI Mem. App. 2 §3 *with*

PLS.' MEM. IN SUPP. OF MOTION FOR TRO AND, IF NECESSARY,
FOR EXPEDITED HEARING ON PLS.' PRELIMINARY INJUNCTION MOTION

§7131(d) (providing that official time "shall" be afforded in the "amount" negotiated by the agency and exclusive representative).

The Removal Procedures Order similarly sets predetermined outcomes for topics that are supposed to be subject to "good faith" bargaining by prohibiting agencies from agreeing to progressive discipline and other procedures that protect employees. PI Mem. App. 3 §4(b). And the Collective Bargaining Order also imposes arbitrary limits on the duration of bargaining and confines bargaining to a mechanical exchange of written proposals without regard to whether such procedures comply with the duty to negotiate in good faith. PI Mem. App. 1 §5.

## II.   Because OPM Seeks to Immediately Implement the Previously Enjoined Orders, Federal Employees Will Suffer Irreparable Harm

OPM has confirmed that it intends to immediately implement the challenged Orders as soon as the D.C. District Court's injunction is lifted. D.C. Circuit Case No. 18-5289 Doc. #1798620 (Mot. to Expedite Mandate) at 2-6; D.C. Circuit Case No. 18-5289 Doc. #1800975 (Reply in Support) at 1-3. There are provisions of these Orders that will be immediately implemented in any ongoing or imminent bargaining and provisions that will be immediately implemented separate and apart from any bargaining—both types of provisions will cause irreparable harm absent temporary relief that permits this Court to consider and resolve Plaintiffs' Motion for Preliminary Injunction.

With respect to bargaining, SEIU Local 200U is concerned that OPM will order all federal agencies, including the Department of Veterans Affairs for whom its members work, to immediately implement the Orders in any available bargaining scenario. Indeed, this is exactly what the Defendants in AFGE told the D.C. Circuit they want to do. D.C. Circuit Case No. 18-5289 Doc. #1798620 (Mot. to Expedite Mandate) at 6 (explaining that "We are informed that agency officials are presently engaged in collective bargaining with unions in concrete contexts throughout the federal government, including the Office of Personnel Management, the Department of Veterans Affairs, and the Department of Housing and Urban Development … Because of the to-be-vacated injunction, officials who are presently engaged in collective

bargaining on behalf of federal agencies are prohibited from relying on the Executive Orders

…").  As SEIU 200U President Scott Phillipson explained, one of its federal employee units is in

bargaining or soon will be in bargaining with the VA.  Phillipson Decl. in Supp. of PI at ¶55.

The Buffalo VA Professionals unit represented by SEIU Local 200U reached impasse in

bargaining earlier this year, and its agreement is waiting for action by the Federal Service

Impasse Panel.  *Id.* ¶56.  The Defendants explained to the D.C. Circuit that they wanted the

mandate lifted precisely so that they could implement the Executive Orders with respect to

agreements pending before the Impasse Panel:

> Absent relief from this Court, there is a risk that the Impasses Panel may resolve
> those remaining disputes and bring an end to the collective bargaining process
> before the agency will have had the opportunity to negotiate or take positions
> before the Impasses Panel free from the restrictions of the injunction that this
> Court has already unanimously held must be vacated.

D.C. Circuit Case No. 18-5289 Doc. #1798620 (Mot. to Expedite Mandate) at 7.

Mr. Phillipson also explains the harm that SEIU Local 200U will suffer if the employing

agency is permitted to take unlawful positions in bargaining.  Phillipson Decl. ¶¶49-52; *see also*

*Am. Fed'n of Labor v. Watson*, 327 U.S. 582, 594 (1946) ("The loss in bargaining position by the

unions, the disruption of harmonious relationships between the unions and the employers, the

almost certain decrease in union membership—these are matters involving intangible values");

*Nat. Treas. Emp. Union v Chertoff,* 452 F.3d 839, 853 (D.C. Cir. 2006) (recognizing harm to

union caused by unlawful rule prohibiting bargaining over permissive subjects, where "their

bargaining position in all negotiations is fundamentally diminished").  Conducting bargaining

(including under the procedures of the Impasse Panel) under unlawful terms, in which the

employing agency at OPM's direction removes myriad topics from the bargaining table, creates

an opportunity lost that cannot be regained.  Re-running this bargaining will be hugely wasteful

of both the unions' and the government's resources.  Phillipson Decl. ¶51.

Moreover, to the extent that employees and labor unions need to begin to expend their

limited resources to analyze and assess the impact of these (unlawful) provisions and *prepare* for

bargaining, or likewise to prepare for the implementation of these Orders (by warning or counseling their represented employees as to the impact of implementation of these complex orders), these are also scarce resources they cannot get back. Likewise, the government represented to the D.C. Circuit that "[t]he injunction also has practical effects on agency negotiators beyond its prohibitions. The injunction creates uncertainty for agency negotiators…." D.C. Circuit Case No. 18-5289 Doc. #1798620 (Mot. to Expedite Mandate) at 6. Dealing with the implementation, or imminent implementation of arguably unlawful provisions while the unions' preliminary injunction is pending certainly creates uncertainty for union representatives as well.

Moreover, there are provisions of these Orders that will be implemented immediately regardless of bargaining, such as the mandate that no performance improvement period will last longer than 30 days. PI Mem. App. 3 §4(c). Mr. Phillipson explains the adverse impact of such a short time period on the VA employees, many of whom are veterans themselves. Phillipson Decl. ¶¶41-42. Agencies will immediately begin to count and restrict the use of official time in light of the new per-employee twenty-five percent caps. PI Mem. App. 2 (Official Time) §4(a)(ii). Agencies will immediately begin charging unions for office space, or the use of resources like computers, e-mail, or phones. *Id*. §4(a)(iii). While some employees will be temporarily protected from the brunt of these new rules by existing provisions in some collective bargaining provisions, the extent to which such protections exist will vary widely. Many federal employees will suffer harm through the ongoing violation of their statutory rights that could never be remedied later via monetary relief.

### III. Defendants Will Suffer No Harm in Maintaining the Long-Standing Status Quo

The existing statutory civil service system and system of labor-management relations has been in place for 40 years. The government did not suffer harm in complying with that system for another year while the D.C. Court's injunction was in effect, and it will not suffer any harm by complying with those statutory mandates for another few weeks. *See, e.g.*, *NTEU v. U.S.*

*Dept. of Treasury*, 838 F. Supp. 631, 640 (D.D.C. 1993) ("threat of harm to the government is negligible" where "Customs Service continues to function" despite injunction).

## IV. The Public Interest Weighs Heavily in Favor of Enjoining the Implementation of these Orders Pending the Resolution of Plaintiffs' Motion for a Preliminary Injunction

This Court appropriately should consider the public interest in the balance of factors with respect to this Motion for a TRO. First, when the government acts contrary to law, the public interest weighs *strongly* in favor of maintaining the status quo and preventing the implementation of the illegal act. *See, e.g.*, *id.* ("The preservation of . . . the legality of the process by which government agencies function certainly weighs heavily in the public interest."); *see also Clarke v. Ofc. of Fed. Housing Enterp. Oversight*, 355 F. Supp. 2d 56, 66 (D.D.C. 2004) ("there is a substantial public interest in ensuring that [the agency] acts within the limits of its authority"). Second, the public interest is concerned with protections for *public* employees. The Court can properly consider the public interest served by protecting the statutory rights of, and avoiding irreparable harm to, our federal workforce beyond the individuals represented by these unions.

## V. Plaintiffs Move, if Necessary, to Expedite the Hearing on the Motion for Preliminary Injunction

This Court's Local Rule of Civil Procedure 65(b)(2)(A) requires Plaintiffs to submit a proposed order accompanying this noticed Motion for a Temporary Restraining Order that is consistent with Federal Rule of Civil Procedure 65(b)(2). Federal Rule 65(b)(2) limits temporary restraining orders issued *without* notice to fourteen days in duration, with an extension within the Court's discretion. Plaintiffs do not seek issuance of a temporary restraining order without notice and request that the Court issue a TRO extending through such time as the Court is able to hear and resolve Plaintiffs' pending Motion for Preliminary Injunction. The Federal Rules only impose the fourteen-day restriction on TROs issued without notice, and the rules fairly support

the Court's authority to issue a TRO, after notice, that will be in place until the Court is able to resolve the pending Motion for Preliminary Injunction.

In an abundance of caution, and only in the event the Court concludes it lacks the discretion to issue a TRO of longer than fourteen days, despite notice having been given, Plaintiffs also move to expedite the schedule for briefing and hearing their Motion for Preliminary Injunction to permit resolution of that motion prior to the expiration of any TRO. Thus, if the Court issues a fourteen-day restraining order on October 2, 2019, Plaintiffs request that briefing be expedited so as to allow resolution on their Motion for Preliminary Injunction by October 16, 2019. In the event such a schedule is needed, Plaintiffs propose keeping the existing date of October 4, 2019 for Defendants' response to the Motion for Preliminary Injunction; making October 11, 2019 the deadline for Plaintiffs' reply; and scheduling a hearing for either October 14 or 15, 2019 if the Court is available. Defendants do not oppose Plaintiffs' alternative schedule, other than a scheduling conflict for counsel for a hearing during the week of October 14, 2019. Leonard Decl. in Supp. of TRO ¶9.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court enter a temporary restraining order to maintain the status quo by enjoining the implementation of the challenged Executive Orders pending resolution of Plaintiffs' pending Motion for Preliminary Injunction.

Respectfully submitted,

Dated: September 26, 2019

By:  /s/ *Danielle Leonard*

DANIELLE LEONARD (*pro hac vice*)
BARBARA J. CHISHOLM (*pro hac vice*)
MEGAN WACHSPRESS (*pro hac vice*)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108

Tel: (415)421-7151 (office)
dleonard@altber.com
bchisholm@altber.com
mwachspress@altber.com

NICOLE G. BERNER, General Counsel
(*pro hac vice*)
CLAIRE PRESTEL, Associate General
Counsel (*pro hac vice*)
Service Employees International Union
1800 Massachusetts Avenue, NW
Washington, DC 20036
Tel: (202) 730-7468
nicole.berner@seiu.org
claire.prestel@seiu.org

CATHERINE CREIGHTON
CREIGHTON, JOHNSEN & GIROUX
1103 Delaware Avenue
Buffalo, NY 14209
Tel:  716-854-0007
ccreighton@cpjglaborlaw.com

MAIREAD E. CONNOR
LAW OFFICES OF MAIREAD E.
CONNOR, PLLC
White Memorial Building, Suite 204
100 E. Washington St.
Syracuse, New York 13202
Tel: (315) 422-6225
mec@connorlaborlaw.com

*Attorneys for Plaintiffs SEIU LOCAL 200U
and SEIUs*

PLS.' MEM. IN SUPP. OF MOTION FOR TRO AND, IF NECESSARY,
FOR EXPEDITED HEARING ON PLS.' PRELIMINARY INJUNCTION MOTION