ALTSHULER BERZON LLP
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108
(415) 421-7151
FAX (415) 362-8064
www.altshulerberzon.com

STEPHEN P. BERZON
HAMILTON CANDEE
EVE H. CERVANTEZ
BARBARA J. CHISHOLM
JEFFREY B. DEMAIN
JAMES M. FINBERG
EILEEN B. GOLDSMITH
CORINNE JOHNSON
MEREDITH A. JOHNSON
SCOTT A. KRONLAND
ANDREW KUSHNER
REBECCA C. LEE
DANIELLE E. LEONARD
STACEY M. LEYTON
AMANDA C. LYNCH
MATTHEW J. MURRAY
ZOE PALITZ
P. CASEY PITTS
DANIEL T. PURTELL
MICHAEL RUBIN
HUNTER B. THOMSON*
MEGAN WACHSPRESS
STEFANIE L. WILSON

FRED H. ALTSHULER
FOUNDING PARTNER EMERITUS

PETER D. NUSSBAUM
PARTNER EMERITUS

ELIZABETH VISSERS
FELLOW

*ADMITTED IN NEW YORK ONLY

November 12, 2019

*Filed by ECF*

The Honorable Elizabeth A. Wolford
United States District Judge
United States District Court for the Western District of New York
Kenneth B. Keating Federal Building
100 State Street
Rochester, New York 14614

     RE:    *SEIU Local 200U et al. v. Trump et al.*, Case No. 1:19-cv-01073-EAW

To the Hon. Elizabeth A. Wolford:

    Attached as Exhibit A is supplemental authority relevant to the issues pending before the Court in Plaintiffs' Motion for Preliminary Injunction: a Memorandum Opinion from the United States District Court for the District of Columbia in *Federal Law Enforcement Officers Assn. v Cabiness*, D.D.C. Case No. 9-cv-00735-CKK (Nov. 4, 2019). This Opinion came to Plaintiffs' attention after the hearing on Friday, November 8, 2019.

                                              Sincerely,

                                              /s/ *Danielle Leonard*

                                              Counsel for Plaintiffs



EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL LAW ENFORCEMENT
OFFICERS ASSOCIATION,
    Plaintiff

v.

DALE CABANISS[1], Director, United States
Office of Personnel Management, *et al.*,
    Defendants

Civil Action No. 19-735 (CKK)

**MEMORANDUM OPINION**
(November 4, 2019)

    This case concerns the 2016 decision of Defendants, the Director of the United States Office of Personnel Management and the United State Office of Personnel Management ("OPM"), to implement a policy which resulted in the reduction of supplemental annuity payments for many retired law enforcement officers who are divorced. Plaintiff, the Federal Law Enforcement Officers Association ("FLEOA"), represents 27,000 current and retired federal law enforcement officers and challenges the 2016 supplemental annuity payment policy under the Administrative Procedure Act ("APA"). In Count 1, Plaintiff contends that the policy is arbitrary and capricious; in Count 2, Plaintiff claims that Defendants failed to engage in the proper rulemaking procedures under the APA; and, in Count 3, Plaintiff alleges that Defendants acted in excess of congressional authority by making the policy retroactive. Defendants move for dismissal on two jurisdictional grounds. First, Defendants argue that Plaintiff's APA claims are

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Dale Cabaniss is substituted in his official capacity as the Director of the United States Office of Personnel Management.

1

precluded by the Civil Service Reform Act ("CSRA"). Second, Defendants contend that Plaintiff lacks standing to bring its claims.

Upon consideration of the pleadings[2], the relevant legal authorities, and the record as a whole, the Court DENIES WITHOUT PREJUDICE Defendants' motion. Prior to deciding Defendants' jurisdictional arguments, the Court first must determine whether or not Defendants' 2016 supplemental annuity payment policy constitutes a "rule" which could be subject to pre-enforcement rulemaking review under the APA. And, while the parties provided fulsome briefing as to their jurisdictional and standing arguments, the parties did not provide adequate briefing as to this specific issue.

Specifically, the parties should provide details about the nature of the 2016 supplemental annuity payment policy, such as whether or not Defendants captured the new policy in writing in any way. The Court further requires additional briefing as to whether or not Defendants were permitted to re-interpret their obligations pursuant to the statute without engaging in a rulemaking process. The parties should explain what indicia signal whether the 2016 supplemental annuity payment policy is the type of statutory re-interpretation that does or does not require a rulemaking process. Additionally, insofar as Plaintiff contends that the 2016 supplemental annuity payment policy should be treated as a rule despite the lack of a rulemaking

---

[2] The Court's consideration has focused on the following documents:
- Defs.' Mot. to Dismiss ("Def.'s Mot."), ECF No. 12;
- Pl.'s Mem. of Points and Authorities in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 14;
- Defs.' Mem. in Reply to Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Def.'s Reply"), ECF No. 18;
- Pl.'s Surreply in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Surreply"), ECF No. 21; and
- Defs.' Mem. in Res. to Pl.'s Surreply ("Defs.' Res. to Pl.'s Surreply"), ECF No. 23.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

process, Plaintiff should cite cases in which courts have agreed to treat statutory reinterpretations as rules.

## I. BACKGROUND

Pursuant to the Federal Employees Retirement System ("FERS"), federal government civilian employees may receive retirement benefits, such as annuities and Social Security. Compl., ECF No. 1, ¶ 6. Federal civilian employees who reach retirement age with the required number of service years are entitled to an annuity. *Id.* at ¶ 7. Certain employees, such as law enforcement officers, are eligible to retire at a younger age with fewer service years. *Id.* at ¶ 8. These employees are entitled to a supplemental annuity payment which substitutes for Social Security until the retiree reaches the minimum age to qualify for Social Security. *Id.*

According to Plaintiff, supplemental annuity payments are to "be treated in the same way" as basic annuity payments. *Id.* at ¶ 12 (quoting 5 U.S.C. § 8421(c)). Basic annuity payments can be paid to a person other than the retiree "if and to the extent provided for in the terms of [] any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation." *Id.* at ¶ 9 (quoting 5 U.S.C. § 8467(a)(1)). In interpreting court orders, Defendants "perform[] purely ministerial actions," "must honor the clear instructions of the court," and "will not supply missing provisions, interpret ambiguous language, or clarify the court's intent by researching individual State laws." *Id.* at ¶ 10 (quoting 5 C.F.R. § 838.101(a)(2)).

Plaintiff claims that from the implementation of FERS until 2016, Defendants did not include supplemental annuity payments in the calculation of basic annuity payments to a retiree's former spouse pursuant to a court order unless that court order expressly called for the division

of the supplemental annuity payment. *Id.* at ¶ 13. However, in July 2016, Defendants began apportioning supplemental annuity payments to former spouses of retirees where there was a court-ordered division of basic annuity benefits, even if the court order did not expressly call for the division of supplemental annuity payments. *Id.* at ¶ 15. Plaintiff contends that this change was spurred by Defendants' determination that 5 U.S.C. § 8421(c) required that supplemental annuity payments be apportioned to a former spouse whenever a court order required the apportionment of basic annuity payments. *Id.* at ¶ 16; 5 U.S.C. § 8421(c) (requiring that supplemental annuity payments "be treated in the same way" as basic annuity payments).

Also in July 2016, Plaintiff contends that Defendants calculated the supplemental annuity payment amounts that would have been due to the affected retirees' former spouses had the policy been in effect from the date of their retirement or the date of the court order dividing basic annuity benefits. *Id.* at ¶ 17. Defendants notified the affected retirees of these amounts and began deducting the amounts owed in monthly installments from the annuity payments. *Id.* at ¶¶ 18-19.

Based on the 2016 supplemental annuity payment policy, Plaintiff brings three APA claims. In Count 1, Plaintiff alleges that the policy is arbitrary and capricious because federal employee retirement benefits can be paid to another person only if expressly provided and the new policy pays supplemental annuity payments to former spouses of retirees even if there is no court order expressly providing for the apportionment of supplemental annuity payments. *Id.* at ¶¶ 27-32. In Count 2, Plaintiff contends that the policy constitutes agency action taken without observance of procedures required under the APA. *Id.* at ¶¶ 33-39. Specifically, Plaintiff alleges that Defendants' "reinterpretation" of FERS is a legislative rule for which Defendants failed to engage in proper rulemaking such as notice-and-comment procedures. *Id.* Plaintiff highlights that the Inspector General for OPM determined that the 2016 supplemental annuity payment policy

4

constituted a rule within the meaning of the APA which can only be implemented through notice-and-comment rulemaking. *Id.* at ¶ 24. In Count 3, Plaintiff contends that Defendants acted in excess of congressional authority by improperly engaging in retroactive rulemaking. *Id.* at ¶¶ 40-44.

In their Motion to Dismiss, Defendants argue that each of Plaintiff's Counts should be dismissed because the CSRA precludes Plaintiff's claims and because Plaintiff lacks standing. As will be further explained below, prior to resolving these jurisdictional issues, the Court requires additional briefing as to the nature of the 2016 supplemental annuity payment policy and how the Court should decide whether or not the policy should be subject to pre-enforcement rulemaking review under the APA.

## II. LEGAL STANDARD

Defendants move to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction. A court must dismiss a case when it lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). In doing so, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (internal quotation marks omitted)); *See also Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.").

"At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005).

Despite the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000).

### III. DISCUSSION

Defendants present two jurisdictional grounds for dismissing Plaintiff's Complaint. First, Defendants contend that APA review of the 2016 supplemental annuity payment policy is precluded by the CSRA. Second, Defendants argue that Plaintiff lacks standing to bring claims in this Court. For the reasons explained below, the resolution of both of these arguments likely turns on whether or not the 2016 supplemental annuity payment policy required Defendants to engage in a rulemaking process and whether or not the Court should treat the policy as a rule under the APA.

In its Complaint, Plaintiff states that "Defendants' interpretation of FERS is an agency statement of particular applicability and future effect designed to implement law, and thus constitutes a rule within the meaning of" the APA. Compl., ECF No. 1, ¶ 34. Plaintiff goes on to explain that "Defendants' rule is a legislative rule that has the force and effect of law" and "[b]y formulating this rule, Defendants therefore engaged in rulemaking within the meaning of" the APA. *Id.* at ¶¶ 35-36. In its Opposition to Defendants' Motion, Plaintiff contends that because the 2016 supplemental annuity payment policy has been in effect for nearly three years and the OPM has indicated that it will not revisit the issue, the policy "must be deemed 'final' agency action for purposes of APA review." Pl.'s Opp'n, ECF No. 14, 11 (quoting *OCONUS DOD Employee Rotation Action Group v. Cohen*, 144 F. Supp. 2d 1, 6 (D.D.C. 2000) (finding that a pre-enforcement challenge to a draft agency policy was available under the APA and not precluded by the CSRA)).

Defendants dispute that the 2016 supplemental annuity payment policy is a rule for purposes of the APA. Instead, Defendants contend that, prior to 2016, they "failed to apply the plain language of a statute, which was unambiguous, as Congress intended. OPM made a correction, as it was obligated to do, resulting in the appropriate application of law." Defs.' Mot., ECF No. 12, 9. Defendants explain that "OPM has not engaged in rulemaking nor adopted some new 'interpretation' of the language in the statute." *Id.* at 10. Specifically, Defendants highlight that no administrative proceeding took place in developing or implementing the 2016 supplemental annuity payment policy.

While the parties' disagreement on this matter is patent, the parties failed to adequately and fully brief the issue as to the nature of the 2016 supplemental annuity payment policy and how the Court should decide whether or not the policy should be subject to pre-enforcement rulemaking review under the APA. And, the Court concludes that this issue is too consequential to the ultimate resolution of Defendants' jurisdictional arguments to rely on cursory arguments and briefing.

To explain why this issue is significant and to guide the parties in potential future briefing, the Court will provide a brief description of preclusion under the CSRA. The CSRA "cover[s] the field of federal employee claims." *Filebark v. U.S. Dep't of Transportation*, 555 F.3d 1009, 1014 (D.C. Cir. 2009). Pursuant to the CSRA, actions affecting federal employees are first reviewed by the OPM. 5 U.S.C. § 8347(a)-(c). Next, the United States Merit Systems Protection Board ("MSPB") reviews the "administrative action or order affecting the rights or interests of" the federal employee. 5 U.S.C. § 8461(d)(1). Following review by the MSPB, judicial review is exclusive to the Federal Circuit. 5 U.S.C. § 7703(b)(1). Under the CSRA, "[r]eview by OPM/MSPB/Federal Circuit is the exclusive remedy for claims regarding

retirement benefits of federal workers." *Eisenbeiser v. Chertoff*, 448 F. Supp. 2d 106, 111-112 (D.D.C. 2006).

Because the CSRA offers a comprehensive remedial scheme for disputes as to retirement benefits, Defendants argue that the CSRA precludes review of Plaintiff's APA claims. An administrative action is reviewable under the APA only if "there is no other adequate remedy in a court." 5 U.S.C. § 704. The APA "does not provide additional judicial remedies in situations where Congress has provided special and adequate review procedures." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (internal quotation marks omitted); 5 U.S.C. § 701(a)(1) (explaining that the APA does not apply "to the extent that [other] statutes preclude judicial review"). The APA does not provide jurisdiction for claims for which an adequate remedy is otherwise available or for claims seeking relief expressly limited by another statute. *Fornaro v. James*, 416 F.3d 63, 66 (D.C. Cir. 2005). Where Congress has provided a separate statutory scheme with remedies for a plaintiff's claims, an APA claim is properly dismissed. *Id.*

However, Defendants acknowledge that there is an exception to the CSRA's preclusion of APA claims whereby a district court can conduct pre-enforcement review of OPM rulemaking.

> 'The APA has often been found to provide jurisdiction for a federal court to hear union challenges to agency regulations or policies of general application on the grounds that they were inconsistent with a statute or the Constitution.' *NTEU v. Chertoff*, 385 F. Supp. 2d 1, 23 (D.D.C. 2005), *partially reversed on other grounds*, 452 F.3d 839 (D.C. Cir. 2006) (citing *NTEU v. Horner*, 854 F.2d 490 (D.C. Cir. 1988) (reviewing under the APA whether an OPM rule exempting positions from competitive service was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law')). In *NTEU v. Cornelius*, 617 F. Supp. 365 (D.D.C. 1985), the court noted that even though aggrieved federal employees are required to bring cases involving individual rights in accordance with the CSRA, the CSRA does not 'insulate OPM from direct judicial review of challenges to *rulemaking* under the APA' and the court had jurisdiction over an APA challenge to the promulgation of a final rule governing appeal procedures of certain adverse employment actions.

Defs.' Mot., ECF No. 12, 10-11 (quoting *Nat'l Treasury Employees Union v. Whipple*, 636 F. Supp. 2d 63, 70 (D.D.C. 2009)).

The United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has repeatedly reaffirmed that pre-enforcement challenges to OPM rulemaking under the APA are not barred by the CSRA. As the D.C. Circuit has explained, the argument that challenges to rulemaking under the APA are barred by the CSRA is "meritless." *Nat'l Treasury Employees Union v. Devine*, 733 F.2d 114, 117 n.8 (D.C. Cir. 1984). "It is one thing to say that when a statute provides a detailed scheme of administrative protection for defined employment rights, less significant employment rights of the same sort are implicitly excluded and cannot form the basis for relief directly through the courts." *Id.* However, "[i]t is quite different to suggest … that a detailed scheme of administrative adjudication impliedly precludes preenforcement judicial review of rules." *Id.*; *see also Nat'l Treasury Employees Union v. Egger*, 783 F.2d 1114, 1117 (D.C. Cir. 1986) (explaining that the court did not "ignore or disparage" the ruling that the CSRA does "not apply to pre-enforcement judicial review of rules"). Additionally, other district courts within this Circuit have found that the CSRA does not preclude jurisdiction under the APA for pre-enforcement challenges to OPM's rulemaking. *See Whipple*, 636 F. Supp. 2d at 69-71 (finding the plaintiff's APA claims that OPM's regulation was arbitrary, capricious, and contrary to law were not precluded by the CSRA); *see also Nat'l Treasury Employees Union v. Chertoff*, 385 F. Supp. 2d 1, 23 (D.D.C. 2005), *aff'd in part and rev'd and remanded on other grounds*, 452 F.3d 839 (D.C. Cir. 2006) (finding the plaintiff's APA challenge to OPM's regulations was not precluded by the CSRA); *OCONUS*, 144 F. Supp. 2d at 6-8 (explaining the plaintiff's APA challenge to the OPM's draft regulation was proper and not precluded by the CSRA).

Defendants appear to acknowledge the availability of pre-enforcement review of OPM rulemaking under the APA. *See* Defs.' Mot., ECF No. 12, 9-11 (acknowledging the availability of APA pre-enforcement review of OPM rulemaking but arguing that it is not applicable in this case). And, none of the cases cited by Defendants would appear to limit this type of review. Defendants rely primarily on four cases to argue that the CSRA precludes review of Plaintiff's APA claims. However, these four cases do not appear to have any impact on a district court's jurisdiction to conduct pre-enforcement review of OPM rulemaking.

First, in *Fornaro v. James*, 416 F.3d 63 (D.C. Cir. 2005), the plaintiffs sought to use the APA's waiver of sovereign immunity to bring claims arguing that class members were entitled to higher disability benefits. The plaintiffs sought an order requiring that OPM notify class members of their entitlement and pay them higher benefits. 416 F.3d at 64. The D.C. Circuit concluded that it lacked jurisdiction because the specific relief sought in court, a recalculation of disability benefits for individual claimants, could also be sought through the CSRA. *Id.* at 68. Here, Plaintiff does not seek a recalculation of supplemental annuity payments for individual retirees. Instead, Plaintiff seeks a finding that Defendants' 2016 supplemental annuity payment policy is invalid and an injunction against applying it. Compl., ECF No. 1, Prayer for Relief. Accordingly, *Fornaro* does not appear to mandate preclusion under the CSRA in this case.

Second, in *Elgin v. Department of Treasury*, 567 U.S. 1 (2012), the United States Supreme Court concluded that "the CSRA provides the exclusive avenue to judicial review when a qualifying employee challenges an adverse employment action by arguing that a federal statute is unconstitutional." 567 U.S. at 5. Unlike in this case, the plaintiffs in *Elgin* did not raise claims under the APA. Moreover, the plaintiffs in *Elgin* were challenging a discrete employment

decision rather than any OPM rulemaking. As such, *Elgin* is not relevant to the Court's present analysis.

Third, in *American Federation of Government Employees, AFL-CIO v. Trump*, 929 F.3d 748 (D.C. Cir. 2019) (*AFGE* II), the D.C. Circuit concluded that the plaintiffs' constitutional claims challenging the President's executive orders were precluded by the CSRA. 929 F.3d at 755-61. Again, the Court is not convinced that *AFGE II* is relevant as to whether or not the Court has jurisdiction to conduct pre-enforcement review of OPM rulemaking. While *AFGE II* concerns preclusion under the CSRA, it does not concern the preclusion of APA claims. Moreover, *AFGE II* contains no mention of prior D.C. Circuit cases expressly permitting pre-enforcement review of OPM rulemaking. *See Egger*, 783 F.2d at 1117; *Devine*, 733 F.2d at 117 n.8. As such, at this time, the Court is not prepared to say that D.C. Circuit precedent permitting APA review of OPM rulemaking was overruled by a case which did not even involve APA claims.

Finally, in *American Federation of Government Employees, AFL-CIO v. Secretary of the Air Force*, 716 F.3d 633 (D.C. Cir. 2013) (*AFGE I*), the D.C. Circuit found that the CSRA precluded review of several Air Force instructions. 716 F.3d at 637-40. However, while *AFGE I* did involve the preclusion of APA claims, it did not involve a pre-enforcement challenge to rulemaking. As such, the Court concludes that *AFGE I* does not appear to necessitate the preclusion of Plaintiff's APA claims in this case.

Accordingly, it appears that Defendants have not presented any argument or precedent implying that this Court is prohibited from engaging in pre-enforcement review of OPM rulemaking. Instead, the parties' dispute centers on whether or not the 2016 supplemental annuity payment policy is an OPM rule for which pre-enforcement review is available under the APA.

This dispute affects both of Defendants' arguments in favor of dismissal for lack of jurisdiction. First, if the 2016 supplemental annuity payment policy is not a rule, then pre-enforcement review of OPM rulemaking is unlikely to be available through the APA. Without the availability of pre-enforcement review of OPM rulemaking, preclusion under the CSRA is more likely. Second, Defendants' standing argument is largely derivative of their CSRA preclusion argument. Defendants contend, in part, that Plaintiff does not have associational standing because "[n]o individual member of FLEOA would have standing to pursue plaintiff's claims in District Court because of the claims preclusion" under the CSRA. Defs.' Reply, ECF No. 18, 21. If an individual retiree could not bring APA claims challenging the 2016 supplemental annuity payment policy due to CSRA preclusion, then Plaintiff likely lacks standing to bring such claims. As such, in order to resolve either of Defendants' jurisdictional arguments, the Court must first determine if the 2016 supplemental annuity payment policy is a rule capable of pre-enforcement review under the APA. And, the resolution of this issue requires additional, targeted briefing by the parties.

### IV. CONCLUSION

For the reasons explained above, this Court's jurisdiction to hear Plaintiff's APA claims likely turns on whether or not the 2016 supplemental annuity payment is subject to pre-enforcement rulemaking review under the APA. Lacking adequate argument and briefing as to this specific issue, the Court DENIES WITHOUT PREJDUICE Defendants' Motion to Dismiss. An appropriate Order setting out next steps accompanies this Memorandum Opinion.

As is indicated in the accompanying Order, the parties have provided adequate briefing as to the CSRA's preclusion scheme and the parties' jurisdictional and standing arguments. Supplemental briefing should instead focus on details about the nature of the 2016 supplemental

annuity payment policy, such as whether or not Defendants captured the new policy in writing in any way. The Court further requires additional briefing as to whether or not Defendants were permitted to re-interpret their obligations pursuant to a statute without engaging in a rulemaking process. The parties should explain what indicia indicate whether this policy is the type of statutory re-interpretation that does or does not require a rulemaking process. Additionally, insofar as Plaintiff contends that the 2016 supplemental annuity payment policy should be treated as a rule despite the lack of a rulemaking process, Plaintiff should cite cases in which courts agreed to treat statutory reinterpretations as rules.

                                                                  /s/
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge